Filed Jan. 19, 1886.

---

No. 11,893.

## HAWKINS v. JOHNSON ET AL.

NEGLIGENCE.—*Master and Servant.—Injury of Teamster by Factory Machinery. —Act Performed by Direction of Foreman.—Knowledge of Danger.*—One who, while employed to haul stave-bolts to a factory and to unload them at a certain place, to reach which it is necessary to pass through a narrow way under a revolving shaft, which, without his knowledge, had been broken and repaired with projecting bolts after his last previous load had been delivered, and the wagon way so raised that he could not sit on the load and drive under the shaft as he formerly had done without danger, is directed by his employer's foreman to drive under the shaft, then in motion, and unload his wagon at the usual place, and, in attempting to do so, and in ignorance of the danger until it is too late to avert it, is caught by the projecting bolts and injured, the employer is liable, unless, by the exercise of reasonable care, the employee could have discovered and avoided the danger.

Hawkins v. Johnson et al.

SAME.—*Contributory Negligence.—Instruction.—Province of Jury.*—In such case, the employee being ignorant of any hazard, an instruction that the employer had the right to expect that if there were a hazardous course, and a non-hazardous course, he would adopt the non-hazardous one, and that if he voluntarily chose to take the dangerous course, and was injured, he had contributed to his own injury and could not recover, is an invasion of the province of the jury and erroneous.

SAME.—*Direction by Employer to Drive Over Particular Way.—Presumption of Safety.*—One who is directed by an employer to drive over a particular way has the right to assume that the way is at least reasonably safe, and, if he had previously driven over it, that it is as safe as on the former occasions.

From the Martin Circuit Court.

T. M. Clarke and A. T. Rose, for appellant.

C. S. Dobbins, for appellees.

ZOLLARS, J.—Appellant brought this action to recover damages resulting from a personal injury received at the stave factory of appellees.

The evidence tends to establish the following facts: Appellees, at the time of and prior to the injury of appellant, were the owners of a stave factory, the machinery of which was propelled by steam-power. An iron shaft, about two inches in diameter, extended horizontally from the factory building and connected with, and furnished the means of operating, a pump which supplied water for the boiler. The shaft was supported by two posts, which were about thirteen feet apart. Between these posts, and under the shaft, there was a wagon way, used for bringing in staves to be worked in the factory. Frequently, staves were thrown and piled between the posts, so that the way was narrowed to eight, nine and ten feet. The shaft was enough above the ground that a person might drive under it, sitting upon a wagon loaded with staves. The shaft was operated by the engine in the factory, and when being used made about two hundred and sixteen revolutions per minute. It was smooth, having no projections upon it that would catch the clothes of a person in close proximity. This was the condition of things

when appellant was employed by appellees to haul staves from the country and unload them in the yard of the factory. Three weeks prior to the injury appellant had brought in three or four loads of staves, and had driven over the way and under the shaft, and unloaded them at the usual place, and, so far as shown, the only place where such staves were kept. Between this time and the time when appellant was injured, the shaft had been broken near the middle, and by appellees' direction had been repaired. It was repaired by means of a collar covering the break, and about two feet long. This collar was about a half inch thick, or three inches in diameter, and was kept in place by means of bolts passed through it and the shaft. The heads of these bolts protruded beyond the collar about a half inch. The other end of the bolts, with the nuts thereon, protruded about three-quarters of an inch beyond the collar. The way had also been raised, so that a person sitting upon a load of staves could not pass under the shaft. This was known to appellees, having been done by their direction. On the 6th day of January, 1883, appellant went to the factory with a load of staves, and was directed by appellees' foreman to drive under the shaft, which was then in motion, and unload the staves at the usual place. Appellant was ignorant of the facts that the way had been raised, and that the shaft had been broken and repaired. The foreman did not inform him of either fact. At that time, also, staves were piled between the posts, so that the way was narrowed to eight or nine feet. Being thus ignorant, and not noticing any change, appellant obeyed the direction of the foreman, and attempted to drive under the revolving shaft. When his horses came under the shaft he noticed that it was too low to permit him to pass under it. He thereupon dropped his lines and stepped over the shaft. In attempting to take them up again, his clothes were caught by the bolts projecting from the collar on the shaft, he was lashed to it, and his right arm was so broken and torn that amputation was necessary. The increased size of the shaft at the place

where it was repaired, occasioned by the collar, might have been noticed, but the projecting bolts could not have been seen when the shaft was revolving, as it was.

The testimony of appellees' foreman is, that he directed appellant to drive where he had been taking the staves before. There is no evidence that there was any other way to reach that place except the way under the revolving shaft, nor that the foreman indicated any other way aside from that which the appellant and others alike engaged had been accustomed to use. There is no direct evidence as to the powers and duties of the foreman, but it seems to have been conceded that he had authority to act for the principal and give the directions he did.

Upon this evidence, which is within the issues, the court gave twelve instructions, to the giving of the 6th, 7th, 8th, 9th and 10th of which appellant excepted. First, in the order of discussion by counsel, is the ninth, which is as follows:

"9. It is insisted by the plaintiff that he was directed by defendants' foreman to drive with his loaded wagon under the shaft in question. If it is true, as plaintiff insists, that he was required to drive under the shaft, and that in obediente thereto he did so and was injured, still, if you find it was an act of carelessness and negligence on the part of the plaintiff to drive under and step over the revolving shaft when his clothing was caught and he was dragged upon the shaft, then the fact that he was directed to drive under the shaft would not authorize plaintiff to expose himself needlessly and carelessly by stepping over the shaft. In passing a point of danger, the employee must not voluntarily expose himself to dangers and perils which he could avoid by another course of conduct or action, which reasonably might be adopted. When there are two or more courses of conduct or action before such person equally within reach, and one or more of them dangerous and hazardous, and another not dangerous and hazardous, the employer has a right to expect that he will adopt the non-hazardous course; and if

he voluntarily chooses to take the dangerous and hazardous course, and is thereby injured, he has contributed to his own injury and can not recover."

The latter part of this instruction, at least, is erroneous, for the reason that it puts the case to the jury upon a basis not warranted by the evidence, and because therein the court usurps the province of the jury in determining what, in this case, might constitute contributory negligence on the part of appellant. As we have seen, there is no evidence that there was any other way over which appellant might have driven to reach the usual place of unloading the staves. There is a conflict in the evidence as to whether or not the way under the shaft was sufficiently wide, between the staves piled therein, to allow appellant to walk beside the wagon and drive his team. Doubtless, he might have gone with the horses and led them under the shaft. It may be that the court had reference to one or both of these modes of conducting the horses under the shaft, in speaking of a nonhazardous course of conduct. However that may be, it was erroneous, under the evidence, to charge the jury that the employer, the appellees in his case, had the right to expect that appellant would adopt the non-hazardous course, if there was any. He did not know that there was any hazard. He had driven over the way before with safety, and so far as shown by the evidence there was no danger in so doing. It had been rendered dangerous by reason of being raised, and by reason of the projecting bolts. Of these changes he had no knowledge. Being thus ignorant of the dangers that appellees had created, relying upon his former knowledge of the way as a safe way, and obeying the directions of appellees' foreman, they had no right to expect that he would get from his wagon and walk with his horses or beside the wagon, if that were possible, or that he would do otherwise than as he had formerly done. When appellant was directed by the foreman to drive over the way, he had a right to believe that

it was, at least, as safe as when he drove over it on former
occasions. Instead of appellees having the right to expect
that he would discover the danger and adopt the less haz-
ardous course, if there was any such, it was clearly their duty,
when they, by their foreman, directed him to pass over the
way to inform him of the changes and resulting danger.
Neither an employer nor any other proprietor has a right to
direct or invite an employee or other person, having busi-
ness at and upon his premises, to drive over a particular way,
and expect that such employee or person will take precau-
tions to avoid unknown dangers. Such direction or invita-
tion, in such a case, is an implied statement that the way is
a safe way. The person thus directed or invited has the
right to assume that the way is, at least, a reasonably safe one.
*Nave* v. *Flack*, 90 Ind. 205 (46 Am. R. 205); *Indiana Car
Co.* v. *Parker*, 100 Ind. 181.

The direction by the foreman in this case might well have
thrown appellant off his guard, and occasioned the exercise
of a less degree of care than he might have exercised but for
such direction. Having directed appellant to drive over the
way, and having given him no notice of the danger, appel-
lees ought to be held liable unless appellant by the exercise
of reasonable care might have discovered the danger and
avoided the injury.

In all of the instructions the court below treated the case
as being one of an employee engaged to work with and about
machinery. We do not think that it is such a case. Appel-
lant clearly was not employed to work with and operate ma-
chinery, nor was he, in a proper sense, employed to work
about machinery; he was employed simply to haul staves to
the factory. There was not, necessarily, any hazard con-
nected with his employment; surely none as connected with
the machinery of the factory. *Buzzell* v. *Laconia Manfg. Co.*,
48 Maine, 113.

But if the case should be put upon the theory of the court,
it would be no less the duty of the employer to inform the

Hawkins v. Johnson et al.

employee of increased danger, created by him in the change of the machinery, unless the employee has notice, or such changes and increased danger are so apparent that he ought to take notice. *Atlas Engine Works* v. *Randall*, 100 Ind. 293 (50 Am. R. 798); *Baltimore, etc., R. R. Co.* v. *Rowan,* 104 Ind. 88; *Stringham* v. *Stewart*, 3 N. E. Rep. 575, 579n; *O'Neil* v. *St. Louis, etc., R. W. Co.*, 9 Fed. R. 337; *Hobbs* v. *Stauer*, 62 Wis. 108; S. C., 22 N. W. R. 153; *Indianapolis, etc., R. R. Co.* v. *Love*, 10 Ind. 554; Whart. Neg., section 206; *Buzzell* v. *Laconia Manfg. Co., supra.*

Whether or not in this case appellant ought to have taken notice of the changes and resulting danger, and was guilty of contributory negligence because he did not avoid the danger by a different course of conduct, is another question. Following the portion of the instruction above commented upon, the instruction closes as follows: "And if he voluntarily chooses to take the dangerous and hazardous course, and is thereby injured, he has contributed to his own injury, and can not recover."

As applied to the evidence in this case, this instruction is, that if there were a hazardous course, and a non-hazardous course of conduct that appellant might have adopted, and he voluntarily chose to adopt the hazardous one, which was to step over the revolving shaft, he was guilty of contributory negligence, and can not recover. This was a clear usurpation of the province of the jury.

As we have seen, appellant obeyed the direction of the foreman; he had no knowledge, nor was he warned, of the changes and resulting danger. He seems to have made no inspection of the way or revolving shaft before attempting to drive under it. He seems to have relied upon his previous knowledge and the direction of the foreman. He did not know, nor did he notice, that he could not pass under the shaft until his horses had come under it, and then, instead of stopping his horses, if that were possible, or dropping his lines and jumping from the wagon, or jumping from the wagon

and holding on to the lines, if either were possible, he dropped the lines, that they might pass under the shaft, and stepped over it, and attempted to take them up. Whether he might have stopped the horses, got off the wagon, and drove or led them under the shaft with safety; whether he might have jumped from the wagon and escaped injury, and whether or not one or the other of the above indicated courses of conduct was open to him, and whether one or the other was the most prudent for him to adopt under all the circumstances, and whether or not under all of the circumstances he acted as an ordinarily prudent person, were questions for the jury, under proper instructions from the court. The court could not say that one course or the other was the more prudent, nor that the adoption of the more hazardous was, under all the circumstances, as a matter of law, contributory negligence. *Indiana Car Co.* v. *Parker, supra; Louisville, etc., R. R. Co.* v. *Orr,* 84 Ind. 50; *Pennsylvania Co.* v. *Long,* 94 Ind. 250; *Pittsburgh, etc., R. W. Co.* v. *Wright,* 80 Ind. 236; *Louisville, etc., R. W. Co.* v. *Richardson,* 66 Ind. 43 (32 Am. R. 94).

The adoption of the more hazardous course of conduct is not necessarily negligence. That depends upon the knowledge of the actor and the circumstances under which he is called upon to act. He might be ignorant of the less hazardous course, and he might be called upon to act under such circumstances as that he should not be required to exercise the best judgment in choosing between different courses of conduct.

Mr. Wharton says : "A prompt and faithful employee, suddenly called upon by a superior to do a particular act requiring immediate attention, can not be supposed to remember at the moment the defect that would make his doing the act dangerous ; and even if he should remember it, he may conclude, from the fact that he is ordered to do the particular act, that the defect, which would have interfered with the execution of such an order, is remedied." Whart. Neg., section

219, and cases there cited. *Greenleaf* v. *Illinois Central R. R. Co.*, 29 Iowa, 14, 47 (4 Am. R. 181).

For the error in giving the ninth instruction the judgment must be reversed. We think it is not necessary to consider separately the other instructions, as what we have said disposes of the material questions made upon them.

The judgment is reversed, with costs, and the cause remanded with instructions to the court below to sustain appellant's motion for a new trial.

Filed Jan. 9, 1886.