GEORGE HARKER, Appellee, v. BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY COMPANY, Appellant.

1. **Master and Servant:** RISKS ASSUMED: EXCEPTION. Where a conductor on one of the defendant's freight trains, who was familiar with an awning maintained by the defendant over a platform at one of its stations, and knew that it was dangerous to employees engaged

upon freight trains, yet exposed himself to such danger in obedience to the commands of his superior, requiring him to act in haste, and in disregard of other orders already received, and the circumstances were such that he might easily, for the time, have forgotten the presence of the awning, *held,* that whether he was negligent or not was a question for the jury.

2. ———: ———: PERSONAL INJURY: DAMAGES: VERDICT. Where a. conductor on a freight train was so injured by the company's negligence that he suffered severe pain for about ten days, was confined. to bed for a week, was unable to perform any labor for three months, and no manual labor of any consequence for nine months, and there was evidence from which the jury was justified in finding that he was permanently disabled from the discharge of the duties of a freight. conductor, and it further appeared that, when injured, he was thirty years of age, that his expectancy of life was thirty-four years, and that he was earning sixty-five dollars per month as conductor, *held,* that a verdict for seven thousand, six hundred and sixty dollars was. not excessive.

*Appeal from Dickinson District Court.*—HON. GEORGE H. CARR, Judge.

MONDAY, MAY 22, 1893.

ACTION to recover for injuries alleged to have been sustained by the plaintiff in consequence of negligence on the part of the defendant. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*J. W. Cory* and *S. K. Tracy,* for appellant.

*Parker, Funk & Carlton,* for appellee.

ROBINSON, C. J.—In February, 1890, the plaintiff was in the employment of the defendant, as conductor of a freight train. His ordinary run was from Estherville to a siding near Hotel Orleans, at Spirit Lake, where ice was being loaded, and back to Estherville. At that time there was a railway platform south of the hotel, over a part of which was an awning about fifty feet in length, constructed to protect passengers who

should be there for trains. On a day of the month named the plaintiff left Estherville with his train, which was made up of empty cars, under orders to set out a part of them on a side track at the Hotel Orleans, and to take the remainder about eighty rods further west, to a point where ice was being loaded. When he arrived near the hotel, he found loaded cars standing on the main track, between the switches. He slackened the speed of his train, intending to set out some of the cars, as he had been ordered to do, and to couple onto the cars on the main line. The engine had been backed from Estherville, was at the west end of the train it was drawing, and had reached the loaded cars. The plaintiff was on a car near the engine, but before it reached the platform he descended, and met one, Forrest, who was the train master of the defendant, and his superior in authority. Forrest said to him: "Damn it; they are waiting for cars down here. Where have you been? Couple that engine onto these cars. Back them right up to the main line. Take everything up to the side." In obedience to that direction, the plaintiff coupled the engine, which was moving slowly, to the loaded cars, and stepped out to one side. Forrest took charge of the train, and gave the signal for backing. The plaintiff then started eastward to go onto the foremost car of his train, when Forrest said to him, "The brakes are set on those cars," referring to those to which the engine had just been coupled. That was, in effect, an order to loosen the brakes, and the plaintiff at once started westward, running to overtake the loaded cars; climbed up the side of the one next to the engine, to loosen the brakes; and, just as he had reached the top, was struck in the back by a corner of the awning, and received the injuries of which he complains.

The plaintiff charges the defendant with negligence, in maintaining the awning in the position in which it

was at the time of the accident; in running the train towards it at too rapid a rate of speed while he was upon it; and in ordering him to go upon it, to loosen the brakes, while it was being so run.   The defendant denies negligence on its part, and avers that the plaintiff was injured by reason of his own negligence.

I. The car which the plaintiff was climbing when injured was one of the defendant's ordinary box cars.

1. MASTER and servant: risks assumed: exception.

There is nothing to show that he was ascending it in any way other than the usual manner, and the evidence is ample to sustain the charge of negligence on the part of the defendant in maintaining the awning in the condition in which it was when the accident occurred.   That it was so negligent is not denied with any apparent confidence.   But the defendant contends that the plaintiff had assumed the usual risks of its service, and the perils which he incurred from structures which were visible and well known to him, and that, by remaining in its service after obtaining the knowledge he possessed of the awning, he waived all right to recover for injuries which he might sustain by reason of its existence.   The plaintiff had known of the awning three or four years when he was hurt.   He had been employed on the railway of the defendant, from Estherville to Spirit Lake ten or twelve months before the accident, and had unloaded freight under the awning many times.   It was familiar to him, and he and his co-employees had frequently spoken of it as dangerous.   The accident occurred in the daytime, when the danger he incurred in doing what he attempted while the train was passing the awning could have been seen readily.

The general rule is, as claimed by the appellant, that a person who accepts employment with knowledge of its risks does so at his peril, and has no claim on his employer for indemnity on account of such risks, and that if the employee remains in the service of his em-

ployer without objection, and without promise of a change, after obtaining knowledge of special hazards not known to him when the service was entered, he will be deemed to have waived a right to compensation for injuries which he may sustain by reason of such hazards. *Wells v. B., C. R. & N. R'y Co.*, 56 Iowa, 524, and cases therein cited; *Overby v. C. & O. R'y Co.*, 16 S. E. Rep. (W. Va.) 813. But there are exceptions to the general rule, and acts which would be negligent under some circumstances may be the result of reasonable diligence and due care under others. An employee may sometimes do, without negligence, when ordered by a superior, what would be negligence if done voluntarily. *Rayburn v. Central Iowa R'y Co.*, 74 Iowa, 637, 640; *Frandsen v. C., R. I. & P. R'y Co.*, 36 Iowa, 372, 375; *Greenleaf v. Ill. Cent. R'y Co.*, 29 Iowa, 14, 47. There are cases where a subordinate may disobey the order of a superior when to obey would be negligent; as, where the order can not be obeyed with reasonable regard for the safety of human life. *Hawley v. C., B. & Q. R'y Co.*, 71 Iowa, 717, 726; *Wescott v. N. Y. & N. E. R'y Co.*, 27 N. E. Rep. (Mass.) 10; Patt. R'y Acc. Law, sections 334, 335. But an employee is not required to use the highest degree of care and diligence which is possible. Absolute perfection in that respect is not required. *Greenleaf v. D. & S. C. R'y Co.*, 33 Iowa, 52, 57. "Negligence is the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person, under the existing circumstances, would not have done. The duties are dictated and measured by the exigencies of the occasion." *B. & P. R'y Co. v. Jones*, 95 U. S. 439. In 1 Shear. & R., Neg., section 213, it is said: "The mere technical fact of the servant's knowledge of a defect is not sufficient to exonerate the master, if, for any reason, the servant forgets it, and is not in fault in forgetting it, at the precise time

he suffers thereby.    In analogy to the principles already stated under the head of 'Contributory Negligence,' the servant's rights are not prejudiced by his forgetfulness or failure to observe a defect, under the influence of sudden alarm, or of an urgent demand for speed, or if his duties are such as necessarily to absorb his whole attention, leaving him no reasonable opportunity to look for defects."    See, also, *Id.*, section 89; *Plank v. N. Y. C. & H. R. R'y Co.*, 60 N. Y. 607; *Snow v. Housatonic R'y Co.*, 8 Allen, 447.

In *Hosic v. C., R. I. & P. R'y Co.*, 75 Iowa, 683, it appeared that a brakeman had occasion to pass over a car which was so loaded that the passage could not be made without danger to himself, and that he must have known that fact before he went upon the car.    He attempted to pass over it, but fell from it to the ground, and received injuries for which he sought to recover. This court said that whether he was negligent in what he did depended upon all the circumstances of the case; that the efficiency of the railway service, and the due protection of life and property, require prompt obedience to orders, and prompt discharge of duties, on the part of employees, especially in regard to the management of moving trains; and that it would not do to make the subordinate judge of the propriety of obeying an order.  See, also, *Frandsen v. C., R. I. & P. R'y Co.*, 36 Iowa, 372, 375.

In this case the remark of Forrest to the plaintiff, when the latter reached Hotel Orleans, showed irritation, by reason of supposed delay on his part, and a necessity for haste.    The directions he then received were contrary to those given him at Estherville, and which he had communicated to his brakemen.    When he was told that the brakes on the loaded cars were set, and, in effect, to loosen them, he was about one hundred feet east of the awning, and on the same side of the track.  The cars were moving westward at an increas-

ing rate of speed, which was then from four to six miles
an hour. He ran to overtake the car, which he ascended,
and, as he was going up, turned his face towards the
east, to see that the brakeman did not cut the trains as
they had been ordered to do at Estherville. The only
way in which the brakes could be loosened was for some
one to climb the car as he was doing, and at the time
he was not looking at the awning, and did not think of
it. It was natural that he should have been somewhat
confused by the language and conduct of Forrest and
the haste demanded, and that his mind should have
been fully occupied with the effort required to execute
the directions given him. Whether, under these cir-
cumstances, he was negligent in not remembering and
avoiding the awning was clearly a question of fact for
the determination of the jury.

The cases upon which appellant relies are not in
conflict with the conclusions we reach. In *McKee v. C.,
R. I. & P. Railway Co.*, 83 Iowa, 616, it appears that
the employee injured exposed himself voluntarily, and,
without any occasion to incur unusual risk, placed him-
self in a position in which he came in contact with a
wing fence, of which he had knowledge, and which he
would have avoided had he used ordinary care. The
facts involved in *Platt v. C., St. P., M. & O. Railway
Co.*, 84 Iowa, 694, were that the person injured knew
before the accident occurred that the roof of the depot
building projected over the track; that he was engaged
in pushing a car along the track; that the car was higher
and wider than ordinary freight cars, and that he knew
that such was the case; that there was no emergency
which required him to expose himself to danger, but
that, without looking for, or taking any precautions to
avoid, danger, he ascended the car, and was caught
between it and the roof of the building, and injured.
In *Bengston v. C., St. P., M. & O. Railway Co.*, 50 N.
W. Rep. (Minn.) 531, it was held that the employee had

assumed the risks from the acts of negligence which caused his death. In *Overby v. C. & O. Railway Co.*, 16 S. E. Rep. (W. Va.) 813, it was held that the injuries for which a recovery was sought were received in consequence of an effort made by the person injured in direct violation of a rule of the company, with which he had agreed to comply. There was no sudden alarm, no urgent demand for speed, and his duties were not of such a character as necessarily to absorb his attention. The facts involved in *Helfrich v. Ogden City Railway Co.*, 26 Pac. Rep. (Utah) 295, showed that the employee was killed in consequence of gross carelessness on his part. The case of *Fisk v. Fitchburg Railway Co.*, 33 N. E. Rep. (Mass.) 510, is also cited. The plaintiff in that case appears to have been injured while engaged in performing the ordinary duties of his employment. He was chargeable with knowledge of the risk which he incurred, and does not appear to have been acting under circumstances which excused his failure to remember it.

II. The amount of the verdict and judgment is seven thousand, six hundred and sixty dollars. The appellant contends that it is excessive.

2. ——:——:personal injury: damages: verdict.

When injured, the plaintiff was thirty years of age, his expectancy of life was thirty-four years, and he was earning sixty-five dollars per month, as conductor. He testifies that, in consequence of his injuries, he was confined to his bed one week, was unable to perform labor of any kind for three months, and was unable to perform manual labor, excepting a few chores, for nine months; that he suffered severe pain for about three days, and after that time did not suffer much, unless he was moving; that, since the expiration of nine months from the date of the injury, he has done some light work on a farm, and has hunted ducks for the market, but has been unable to do lifting or heavy

work; that the conductor of a freight train is required to do various kinds of lifting, and to set brakes; that he has been unable to do that kind of work; and that the twisting movements required to set brakes causes him great pain, and for a time disables him to do work of any sort. A physician examined the plaintiff at the time of the trial, which was about one year and ten months after the injury was received, and testified that he did not find any mark or indications of injury, and ascertained nothing in regard to it, excepting what the plaintiff told him; also that a physician should be able to ascertain by such an examination whether the injuries exist as claimed. But he also stated, in effect, that if the condition of the plaintiff was correctly shown by his testimony, his injuries were probably permanent. The plaintiff and the physicians were the only witnesses who testified in the case, and the jury were authorized to find from the testimony given that the plaintiff was permanently disabled to discharge the duties of conductor of a freight train, or any but light manual labor. If the jury so found, we cannot say, in view of all the facts stated, that the amount allowed is excessive. *Collins v. City of Council Bluffs*, 35 Iowa, 432; *Rice v. City of Des Moines*, 40 Iowa, 638, 646; *Allender v. C., R. I. & P. Railway Co.*, 43 Iowa, 276, 281; *Funston v. C., R. I. & P. Railway Co.*, 61 Iowa, 452, 463; *Knapp v. S. C. & P. Railway Co.*, 71 Iowa, 41, 43; *Reed v. C., St. P., M. & O. Railway Co.*, 74 Iowa, 188, 195; *Henry v. S. C. & P. Railway Co.*, 75 Iowa, 84, 89; *Knott v. Dubuque & S. C. Railway Co.*, 84 Iowa, 462.

No reason for disturbing the judgment of the district court has been shown. It is, therefore, AFFIRMED.