ROBERT S. J. WHIPPLE vs. NEW YORK, NEW HAVEN & HARTFORD RAILROAD COMPANY.

A railroad corporation like any other employer is bound to take ordinary and reasonable care not to subject its servants to unreasonable danger by sending them to work on dangerous premises, or with dangerous appliances, and if it fails in its duty in this respect and a servant is injured in consequence, without fault on his part and without having voluntarily assumed the risk of his employer's negligence, with full knowledge, or competent means of knowledge, of the danger, he is entitled to recover for the injury sustained.

A telegraph pole, erected by a railroad company so near its track and with such a slant towards the track as to render it dangerous to the company's employees in the performance of their ordinary duty, is a defective structure ; and the location and maintenance of the pole in such a position is negligence on the part of the company.

A brakeman employed by a railroad company in the making up of freight trains, while in the act of climbing a ladder on the side of a moving freight car to reach the top of the car, and in the performance of his ordinary duty, came in contact with a telegraph pole belonging to the company, which had been in use for several years, and was thrown from the car to the ground and injured. The pole was placed so near the track, and with such a slant towards the track, that there was not sufficient space between the ladder and the pole for the brakeman, while in the act of climbing the ladder, to pass the pole without coming in contact with it. In an action brought by the brakeman against the railroad company for the injuries sustained, it did not appear that the plaintiff knew of the close proximity of the pole to the track, but it did appear that his only opportunity to judge of its proximity was while passing it on foot and on the top of moving cars,—that he had never, before the accident, passed or attempted to pass the pole while on the side ladder of a car,—that the difference between the distance which the pole stood from the track and the distance which would have been safe was only seven to eight inches, and that whether or not the pole was dangerous by reason of its proximity to the track could only be determined by experiment or by measurement and calculation.

Held, that the dangerous proximity of the pole to the track was not an obvious defect, the risk of injury from which the plaintiff assumed by continuing in the service of the company.

Held, further, that the plaintiff was not guilty of contributory negligence in attempting to climb the ladder while the car was in motion without looking forward to see if he was in danger from the pole, since he had no reason to apprehend danger from it, and he had a right to rely on the presumption that the company had performed its duty by locating the pole so that it would not endanger the safety of its employees.

Held, further, that the distance between the pole and the side of the freight car might be proved by testimony as to the distance between the pole and another car but of the same pattern and dimensions as the one on which the plaintiff was at the time of the accident, the plaintiff having no means of identifying the latter car, and it not being shown that it was available for measurement.

Where the plaintiff obtained a verdict of $1500 damages in an action for personal injuries caused by defendant's negligence, and in consequence of the injuries he was confined to his bed for five or six weeks and suffered much pain, the defendant will not be granted a new trial on the ground of newly discovered evidence which is directed to the extent of the plaintiff's injuries and goes merely to his improved condition subsequently to that period.

DEFENDANT'S petition for a new trial.

*July* 24, 1896. MATTESON, C. J.    This is an action of the case for negligence.    The accident which caused the injuries to the plaintiff occurred about two o'clock in the afternoon, on December 22, 1894, in the defendant's freight yard in Providence, where the plaintiff had been employed as a brakeman in the making up of freight trains for two or three months previously.    Just prior to the accident the switching engine, with the plaintiff riding on the footboard, on the rear of the tender, had backed down in a southerly direction on a side track to a point opposite the freight house, for the purpose of taking on some cars standing on the side track.    The plaintiff stood on the left hand end of the footboard as the engine was backing down, looking toward the cars which were to be coupled to the engine.    When the engine had reached the cars the plaintiff made the coupling, gave the signal to the engineer to go ahead, and started to climb on to the top of the car next to the engine, his duty requiring him to be in that position so that he could transmit to the engineer the signals which should be given to him by the conductor.    There was no ladder on the end of the car, and, in order to climb to the top of it, the plaintiff stepped from the footboard on to the draw-bar of the tender, thence obliquely to the left on to the corner of the car, at the same time taking hold of a round of the ladder on the westerly side of the car near the end, and swinging himself around the car, and began to ascend the ladder.    Meanwhile the train had started, in obedience to the signal given to the engineer to go ahead ; and when the plaintiff had so far ascended the ladder that his left hand was on the topmost round, and he was reaching up with his right hand for the handle on the top of the car, his back came in contact with a telegraph pole, belonging to the defendant and used to sup-

port some of its signal wires, and he was swept from the ladder and fell to the ground, receiving the injuries for which he sues.   The telegraph pole was three feet five and one-quarter inches from the outside of the westerly rail of the side track, and had stood in that location for a number of years.   The side of a car such as were in use by the defendant at the time of the accident projected beyond the side of the rail twenty inches, and the ladder on the side of it three and one-eighth inches farther.   The pole inclined somewhat towards the side track, so that at the height of eleven feet, that being the height of the top of the car, the space between the pole and the ladder was fifteen and one-eighth inches.   By experiment, made subsequently to the accident, it appeared that this space, though sufficient for a man to pass without coming in contact with the pole, if standing erect on the ladder, was not sufficient by seven or eight inches for him to pass the pole without coming in contact with it when in the act of climbing the ladder.   The jury in the Common Pleas Division returned a verdict for the plaintiff, and the defendant petitions for a new trial alleging that the verdict is against the evidence, that the instructions of the court to the jury were erroneous, and because of newly discovered testimony.

The defendant contends, in support of its petition, that it had a right to locate its telegraph poles, switch stands, bridge abutments, station platforms and other similar structures, near to its tracks, although the location and maintenance of these structures in close proximity to its tracks might involve the risk of injury to its employees; that, as the danger of contact with such structures is a matter of common knowledge, and as they are objects plainly visible, their presence is at once suggestive of danger, and therefore that the risk of being hit by a pole was an obvious danger, and one assumed by the plaintiff when he entered into the defendant's service. There are cases which apparently support these contentions, but they do not commend themselves to our judgment.   We do not think that a different rule should be applied to railroad corporations from that which is established in reference

to other employers, viz., that the master is bound to take ordinary and reasonable care not to subject his servant to unreasonable danger by sending him to work on dangerous premises, or with dangerous appliances, and that if he fails in this respect and the servant has been injured in consequence, without fault on his part and without having voluntarily assumed the risk of the master's negligence, with full knowledge, or competent means of knowledge, of the danger, he is entitled to recover for the injury sustained.    Thompson on Negligence, 972, 973, and cases cited.    In view of this rule we cannot doubt that the location and maintenance of the telegraph pole in the position in which it stood relatively to the side track was negligence, since the necessary result was to expose brakemen, in the discharge of their duty in the usual manner, to the risk of accident such as befell the plaintiff.    *Dorsey* v. *The Phillips & Colby Construction Co.*, 42 Wis. 583 ; *Murphy* v. *Wabash R. R. Co.*, 115 Mo. 111 ; *Johnson* v. *St. Paul, Minneapolis & Manitoba Ry. Co.*, 43 Minn. 53 ; *Chicago & North Western R. R. Co.* v. *Swett*, 45 Ill. 197 ; *Chicago & Iowa R. R. Co.* v. *Russell,* · 91 Ill. 298 ; *New York, Chicago & St. Louis R. R. Co.* v. *Ostman*, 41 Northeastern Rep. 1037.

It is undoubtedly true that a servant assumes all the ordinary risks and perils incident to the employment, and also all risks resulting from the non-performance of the master's duty of which he has knowledge, or of which he has competent means of knowledge, if he continues in the employment after such knowledge or means of knowledge, unless induced to remain by promises of the master to remedy the defect. But a telegraph pole is not in itself dangerous.    It becomes so, and therefore a defective structure, only when placed so near the track that it is a source of danger to the servant in the performance of his duty.    If the servant has knowledge of its dangerous proximity, or if by reasonable observation he could have ascertained its dangerous proximity, it is undoubtedly to be regarded as an obvious danger, the risk of which is assumed by continuing in the service.    Otherwise it is not to be so regarded.

In the case at bar, it does not appear that the plaintiff had knowledge of the dangerous proximity of the pole to the track. Unless, therefore, the fact was sufficiently obvious to have been ascertained by him by reasonable observation, he is not to be held to have assumed the risk of injury from it. We do not think that the fact was sufficiently obvious. The difference between the distance which the pole stood from the track and the distance which would have been safe was only seven or eight inches. The plaintiff had never before the accident, so far as appears, passed or attempted to pass the pole on the side ladder of a car. The only opportunities which he had had to judge of its proximity to the track were from passing it on foot and on the tops of moving cars in the course of his employment, neither of which situations would be favorable for estimating the distance of the pole from the side of a car moving along the track, with sufficient accuracy to know whether or not the pole was safe, the margin of safety or danger being so slight a space. Moreover, even after the accident the testimony shows that experiments were conducted by the defendant for the purpose of determining whether or not the pole was near enough to the track to be dangerous. How can it be said that the proximity of the pole to the track was an obvious defect, when the danger could only be determined by experiment or by measurement and calculation? To the suggestion that the telegraph pole was plainly visible, and that the danger of contact with such a structure is a matter of common knowledge, it is enough to answer that the fact tends, not to prove that the pole is an obvious defect, but rather that the officers of railroads, in the location of such structures, in many instances disregard their duty and consult expense or their own convenience instead of safety of life and limb.

It is urged that if the proximity of the pole to the track which made it dangerous was not sufficiently obvious to the plaintiff to put him on his guard against injury from the pole, it was not sufficiently obvious to the officers of the defendant for them to observe it in the exercise of reasonable care, and hence that it cannot he held that the defendant

was negligent in maintaining the pole in its position. But the answer is that the officers of the defendant located the pole ; that it was their duty to have so located it as to make it safe ; and, consequently, that if they failed in that respect, the defendant must be held chargeable for their default.

The defendant further contends that the plaintiff was guilty of contributory negligence in attempting to climb the ladder of the car while the train was in motion, without looking to see whether he was in danger from the pole, instead of climbing to the top of the car before giving the signal to the engineer to go ahead, or remaining on the footboard of the tender until the car had passed the pole. But if the dangerous proximity of the pole to the track was not so obvious as to be discoverable by observation, and the plaintiff had no notice of the danger, we do not think that it can be held, as a matter of law, that he was guilty of negligence in not looking forward to see whether he was in danger from the pole before starting to climb the ladder. If he had no reason to apprehend danger from it, there was no reason why he. should have been on his guard against it. He had a right to rely on the presumption that the defendant had performed its duty in locating the pole so that it should not endanger the safety of its employees, until he had been apprised in some way of the contrary. If the exigency of the situation required the placing of a structure in such a position as to make it dangerous, it is not too much to require of a railroad company that it should give notice of the danger to its employees. *Darling* v. *New York, Providence & Boston R. R. Co.*, 17 R. I. 708 ; *Scanlon* v. *Boston & Albany R. R. Co.*, 147 Mass. 484 ; *Johnson* v. *St. Paul, Minneapolis & Manitoba Ry. Co.*, 43 Minn. 53 ; *Hawkins* v. *Johnson*, 105 Ind. 29 ; *Baker* v. *Maryland Coal Co.*, 35 Atl. Rep. 10.

The defendant contends that the Common Pleas Division erred in admitting the testimony of Latham, a civil engineer, for the purpose of proving the distance between the pole and the side of the freight car, the car not being the one on which the plaintiff was at the time of the accident. The plaintiff had no means of identifying the particular car on

which he was riding at the time of the accident, and it is a matter of common knowledge that freight cars are here to-day and many miles away to-morrow.   In the absence of evidence to show that the particular car on which the plaintiff was at the time of the accident was available for measurement, we think that it was proper for the court to admit the testimony, it being shown that the car used for the purpose of measurement was of the same pattern and dimensions as the other.

We do not deem it necessary to examine *seriatim* the several requests for instructions made by the defendant, and the rulings on these requests by the Common Pleas Division. The requests were inconsistent with the principles which seem to us to govern the decision of the case, and we think that the instructions of the court to the jury were sufficiently favorable to the defendant.

The newly discovered evidence is all directed to the question of the extent of the plaintiff's injuries.   As the verdict was only for $1500, and it is not denied that the plaintiff was confined to his bed for five or six weeks, during which time he suffered much pain, we do not think that the newly discovered testimony, which goes merely to his improved condition subsequently to that period, is of such importance that it would be likely to lessen the verdict if a new trial were granted.

New trial denied, and case remitted to the Common Pleas Division with direction to enter judgment for the plaintiff on the verdict.

Stiness, J., dissenting on the ground that the pole was an obvious defect.

*Walter B. Vincent*, for plaintiff.

*Frank S. Arnold*, for defendant.