ROBERT KERLIN v. CHICAGO & NORTHWESTERN RAILWAY COMPANY and E. B. McCLURE, Appellees.

**Master and servant:** UNREASONABLE REQUIREMENTS OF THE SERVANT: NEGLIGENCE. The act of a master in requiring a servant to work an unreasonable length of time without adequate opportunity for rest and sleep may be negligent as to a third person, who, without fault on his part is injured because of the servant's weakness or exhaustion, while as between the master and servant the rule might be otherwise.

**Same:** ASSUMPTION OF RISK. It is the general rule that the master must observe reasonable care in directing a servant and sending him into places or situations involving greater hazard than naturally pertains to the particular service; for the servant's position is one of subordination and obedience and he may within reasonable limits suppress his apprehension of danger in reliance upon the superior knowledge of the master. But if the danger to be apprehended from obeying the master's order is better known to the servant than to the master, or if the servant fully appreciates the nature and extent of the danger, he will be held to have assumed the risk.

**Same:** EVIDENCE. In this action by a locomotive engineer for injuries alleged to be the result of continuous, active service until he had become exhausted, the evidence is reviewed and held to show that he was not peremptorily directed to continue the service, and that he was better qualified to judge of his ability to

do so than the master; and that he therefore assumed the risk incident to continuing the service without rest.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

MONDAY, NOVEMBER 21, 1910.

SEE opinion for statement of the case.—*Affirmed.*

*A. J. & J. A. Van Wagenen,* for appellant.

*Wright & Sargent, James C. Davis, George E. Hise,* and *A. A. McLaughlin,* for appellees.

WEAVER, J.—The plaintiff alleges in substance that he was engaged in the service of the defendant as locomotive fireman and engineer; that during the 2d and 3d days of August, 1906, in obedience to the orders and directions of his employer, he was kept in continuous active labor in said service for more than twenty-four hours without sleep or rest, whereby he had become so greatly exhausted that he was unable to appreciate the dangers arising from continuing in his said work while in such condition, and that while thus weakened and exhausted he was negligently ordered by his superior to make still another trip over the road, and that in attempting to obey such order he became unconscious and fell from his engine, sustaining the injury of which he complains.  To this claim the defendant pleads a general denial, and alleges that plaintiff had assumed the risk, if any, arising from his obedience to his superior's orders.

From the testimony offered on the part of plaintiff, the jury would have been justified in finding that for a considerable period prior to plaintiff's injury he had been in the employ of the defendant, originally as a section

hand, later as a locomotive fireman, and thereafter as en-
gineer or fireman, as the business of the company appeared
to demand, on its line of road between Sioux City and
Missouri Valley.  Being at Missouri Valley on the morn-
ing of August 2, 1906, he was called at 4:45 to prepare
to fire the engine hauling a train to Sioux City which was
due to leave at 6:40; the intervening time being employed
in getting his breakfast and making the engine ready for
the trip.  He arrived in Sioux City at 9:05 a. m., from
which place he would be regularly due to leave on the
return trip at 12:10 p. m.  Just prior to 11:30 a. m.
he was notified of his promotion to the rank of engineer
and directed to assume charge of an engine to haul a train
which was due out at that hour, but did not in fact leave
until 12:25 p. m.; plaintiff meanwhile being busy in ob-
taining lunch and working at or about his engine.  The
train reached Missouri Valley at 3:20 p. m., and very
soon again started for Sioux City "with running orders
as far as Onawa."  At Onawa he was engaged with his
engine at yard work for about two hours, when he was
ordered back to Missouri Valley, arriving there about
10 p. m.  On his arrival he received orders to return
to Sioux City.  He objected on account of his weariness,
but the rest of the train crew, who had been at work less
continuously than plaintiff, desired to complete the trip
as ordered, and plaintiff consented, and work was resumed.
The train reached Sioux City about 3 a. m. of August
3d, and after some delay in getting his engine to the
roundhouse plaintiff went to bed about 5 o'clock a. m.
On account of the heat, or his extreme weariness, he was
unable to sleep, and at 8 o'clock he arose and started for
the station, for the purpose of requesting a layoff.  On
his way he met the company's "callboy," who informed
him that he was wanted by the foreman of engines, whose
duty it was to assign enginemen to their runs.  On respond-
ing to the call, he informed the foreman he was "feeling

bum," and told him·of his want of sleep. The foreman complained of a lack of enginemen, and that he had no one else to fire the engine which was to haul the passenger train due to leave for Missouri Valley about noon. Plaintiff spoke of his need of rest and sleep; but the foreman told him it was only about two hours' work, and that he "could stand it all right." He also told plaintiff to come back prepared to stay at Sioux City, as the company would thereafter use him as engineer. Plaintiff finally undertook the service and proceeded to put his engine in readiness. The train pulled out at 12:20 p. m.; plaintiff doing the usual work of fireman until it neared the town of Whiting. At this point, and while the train was in motion, he was standing with one foot on the engine and one foot on the tender, in the act of breaking up lumps of coal, when he suddenly became unconscious and fell outward to the ground, receiving the alleged injuries for which he demands ·compensation. The engineer was looking in another direction at the time, and no one appears to have witnessed the accident. Plaintiff has no recollection whatever of what occurred after he undertook to break the coal until he again regained consciousness after being picked up and taken aboard the train. None of his bones were broken, but he received a cut on his head and one on his leg. His shoulder was also injured, his ankle was sprained, and his spine "bothered" him. One side of his face was bruised by the gravel and cinders upon which he had fallen, and at the time of the trial he claimed to be still suffering from the effects of the accident. He had recovered sufficiently, however, to be then able to run a stationary engine, in which work he was receiving thirty-five cents an hour.

At the close of plaintiff's testimony, defendant moved for a directed verdict in its favor, stating eleven grounds for the requested ruling. These may be grouped in general terms as follows: (1) There is no evidence on which to

find the defendant chargeable with 'negligence; (2) the evidence does not sufficiently negative contributory negligence on plaintiff's part; (3) it appears from the evidence that plaintiff had assumed the risk; and (4) the plaintiff's fatigue, if any, is not shown to have been the proximate cause of his injury. This motion was sustained generally, and upon the verdict so directed judgment was entered against plaintiff for costs, and he appeals.

The first question naturally arising under the issues is whether, as between master and servant, the former may under any circumstances be charged with negligence in

1. MASTER AND SERVANT: unreasonable requirements of the servant: negligence.

requiring or directing the latter to work an unreasonable length of time without adequate opportunity for rest and sleep. That such conduct on the master's part may be negligent as to a third person, who without fault on his part is injured because of the servant's weakness or exhaustion so produced, is not denied by appellee in argument. See also, *Railroad Co. v. Kelton,* 28 Tex. Civ. App. 137 (66 S. W. 887); *Traction Co. v. Crosbie,* 169 Ind. 281 (81 N. E. 474, 13 L. R. A. [N. S.] 1214); *Pelin v. Railroad Co.,* 102 App. Div. 71 (92 N. Y. Supp. 468). But the question presented by the case at bar is one which has not frequently occupied the attention of the courts, and the statute (chapter 103, Laws 32d General Assembly) making it unlawful for any railway company to require or permit a trainman who has been on duty more than sixteen consecutive hours to perform any further service without having opportunity to rest at least ten hours, not having been enacted at the time of plaintiff's injury, has no bearing on the controversy, except, perhaps, as a suggestion of the legislative idea concerning the limit of consecutive service which may reasonably be required of servants engaged in the operation of trains.

In *Smith v. Railroad Co.,* 39 Tex. Civ. App. 468 (87 S. W. 1052), the court appears to have reached a con-

clusion adverse to the position of appellant herein. There an engineer fell asleep on his engine and was injured in a collision, which would have been avoided had he been awake and attentive to duty. He charged the company with negligence in having kept him on duty for thirty-one hours without rest; but. the court held that plaintiff assumed the risk by consenting to remain at his post longer than his strength would reasonably permit, and was therefore not entitled to damages. On the other hand, in *Great Northern v. Conture,* 14 Quebec K. B. 316 (7 A. & E. Ann. Cas. 190), recovery was allowed for the death of a brakeman on the sole ground that deceased had been kept at work for an unreasonable length of time without sleep, thereby so exhausting his strength as to increase the hazard of injury in obeying an order to make a coupling of freight cars. It is true that in this instance the brakeman had not reached his majority, and the action was brought by his father; but the opinion nowhere suggests his minority or lack of experience as a material circumstance affecting his right of recovery. The two cases here referred to, in which the courts appear to reach opposite conclusions, are the only precedents called to our attention by counsel as being directly in point upon the facts involved, and our search of the books reveals no others.

Some other decisions are cited as involving principles applicable to the question before us. *Republic Iron Co. v. Ohler,* 161 Ind. 393 (68 N. E. 901), decided by the Supreme Court of Indiana, holds that the fatigue of the servant from forty-eight hours' continuous labor was a competent circumstance for consideration upon the question whether he appreciated the peril or assumed the risk of the master's alleged negligence in not providing a safe place to work. The same court has held that a master, who in violation of statute requires a youth under sixteen years of age to work more than sixty hours per week, is negligent, and when the employee thus overworked falls

asleep from exhaustion, and is injured, the master is liable, and the plea of assumption of risk is not available. *Steel Co. v. Yedimak,* 172 Ind. 423 (87 N. E. 229). It is manifest, however, that the rules announced in these latter cases are hardly in point in determining the issue we are now considering. Nor do we find much help in our own case of *Kerr v. Waterworks,* 95 Iowa, 509, which is relied upon by appellee. In that case a recovery was sought on the theory that the employer negligently induced its employee to leave his sick room and undertake work which he was not physically fit to perform, and thereby caused or hastened his death. The proof offered on the trial clearly negatived these allegations, and the opinion of the court does no more than to hold that plaintiff failed to establish the case made by his pleadings.

It is, however, an accepted principle of the law that the master must observe reasonable care in giving orders to his servant and in sending him into places or situations where he is subject to greater hazard than naturally pertains to the particular service when performed under rational and proper supervision. *Brick Co. v. Sobkowiak,* 143 Ill. 573 (36 N. E. 572); *Greenleaf v. Railroad Co.,* 29 Iowa, 14; *Patterson v. Railroad Co.,* 76 Pa. 389 (18 Am. Rep. 412); *Fox v. Railroad Co.,* 86 Iowa, 374; *Harker v. Railroad Co.,* 88 Iowa, 413; *Hawley v. Railroad Co.,* 82 N. Y. 370; *Railway Co. v. McCarty,* 49 Neb. 475 (68 N. W. 633); *Cook v. Railroad Co.,* 34 Minn. 45 (24 N. W. 311); *Hawkins v. Johnson,* 105 Ind. 29 (4 N. E. 172, 55 Am. Rep. 169); *Haley v. Case,* 142 Mass. 316 (7 N. E. 877); *Steel Co. v. Schymanowski,* 162 Ill. 459 (44 N. E. 876). Generally speaking, the parties do not stand upon an equal footing as to the control and management of the work in hand, or the manner and means of its performance, and a prudent servant has a right to depend upon the ability and skill of the agent or vice principal in whose charge

2. SAME: assumption of risk.

the common master has placed him, and is not bound to set up his own judgment in resistance to that of his superior. *Car Co. v. Parker*, 100 Ind. 181; *Rogers v. Overton*, 87 Ind. 410. And this is ordinarily true, even where the servant knows or has apprehension of the danger; for his position is one of subordination and obedience, and he may within reasonable limits suppress his fears and suspicions in reliance upon the superior knowledge of the master. *Shortel v. St. Joseph*, 104 Mo. 114 (16 S. W. 397, 24 Am. St. Rep. 317); *Hawley v. Railroad Co.*, 82 N. Y. 370; *Cook v. Railroad Co.*, 34 Minn. 45 (24 N. W. 311); *Sheehan v. Railroad Co.*, 91 N. Y. 332.

But this rule, in the absence of a governing statute, is subject to the general limitation that the order of the master or vice principal can not be relied upon to sustain an action, where the hazard is so clearly imminent or certain that a reasonably prudent servant would refuse obedience. So, too, if the danger to be apprehended in obeying the order is better known to the servant than to the master giving the order, or if the servant fully appreciates the nature and extent of the risk to which he is exposed, he is held to have assumed the risk. *Westcott v. Railroad Co.*, 153 Mass. 460 (27 N. E. 10); *Gorman v. Brick Co.*, 99 Iowa, 257; 1 Labatt, Master & Servant, section 443.

Assuming, then, the truth of all the testimony offered by the plaintiff in this case, and applying thereto, the rules of law to which we have adverted, did he make a showing

3. SAME: evidence.

on which he was entitled to a verdict of the jury? After considerable reflection we feel compelled to answer this question in the negative. That it was negligent to order into such a service an employee who had been without substantial rest or sleep for thirty hours or more may well be conceded; for while there are some, and perhaps many, men who could successfully respond to such a test of endurance, there is in every such effort an ever-present and increasing peril that overtaxed

strength will give way, or that mental faculties will be dulled or totally obscured, thereby inducing disaster. To say the very least, a verdict finding such an order negligent would not be set aside as without support in the evidence.

But the manner in which such negligence affects the plaintiff is somewhat peculiar. The peril to which he was thereby exposed resulted largely from subjective conditions, which were necessarily clearer and more apparent to his own consciousness than they could be to the foreman or superintendent under whose order or direction he acted. Indeed, the evidence tends to show that the foreman realized that plaintiff had been subjected to hard service, and was doubtless considerably worn; for he seems to have addressed him by way of request and argument, rather than by command or peremptory order. He told the plaintiff that there were no engineers or firemen available for this particular train, and said he wanted plaintiff to fire the train to Missouri Valley. Plaintiff did not refuse, nor does he appear to have asked to be excused from the service. The nearest he came to such an expression was to say that he "felt bum," and felt "more like laying off than to make the run." As a witness he says he "felt all right, except being tired and sleepy." The foreman encouraged him by saying that the run was a short one, and that on his return he would have steady work as an engineer, and with the response, "If I have to go, I guess I can," he consented to the service. The conversation was of a good-natured and friendly character, and at no time was there any suggestion that plaintiff would be discharged, or visited with other evidence of the company's displeasure, if he should say that his condition was such that he must decline to undertake the work. If his physical exhaustion had reached that degree which rendered it doubtful whether he could do an additional two or three hours' labor as fireman, and he was not himself conscious of the fact, there is nothing in the record to indicate that such condition was

any more apparent to the foreman than it was to himself. Indeed, as we have already said, the natural inference is that he was better advised of his ability or want of ability to stand the strain than the foreman could possibly have been, and if with this knowledge or superior means of knowledge he chose to accept the service he must be held to have assumed the risk.

What effect the present statute may have upon the rule of assumed risk as applied to cases of this kind we have no occasion to consider. In many of its applications the rule of assumption of risk of perils created by or arising from an employer's negligence is a harsh one, which as an original proposition can not well be harmonized with an enlightened sense of justice; but, until modified or abolished by statute, the courts are bound to observe it as a fixed principle of the law of master and servant. It may farther be said that in the case before us we have an illustration of the operation of the rule in its least objectionable aspect, in that plaintiff, knowing the conditions, of which he now complains, better than it was possible for the defendant to know them, and apparently with full appreciation of his alleged physical unfitness for the task, voluntarily undertook its performance.

Appellee also argues that there is no sufficient showing that the alleged negligent order was the proximate cause of plaintiff's injury, and that in any event he has not shown himself free from contributory negligence. We incline to the view that, were the case otherwise sustainable, these were legitimate questions for the jury to determine.

For the reasons stated, the judgment of the district court is *affirmed*.