# Martin Kolb, alias Martin Kolby, v. William T. Carrington et al.

1. CONTRIBUTORY NEGLIGENCE—*A Question for the Jury.*—The court is of opinion that the question whether the plaintiff was guilty of contributory negligence was one on which fair-minded and honest men might reasonably come to different conclusions, and that it was, under the evidence, as it generally is, a question which should have been submitted to the jury.

2. FELLOW-SERVANTS—*Existence of the Relationship a Question for the Jury.*—The fact that a person authorized to issue orders to other employes of a common master has no authority to hire or discharge men, is not conclusive on the question of his being a fellow-servant of said employes, and in this case the court can not say, from a consideration of the whole evidence, as a matter of law, that appellant and the foreman of appellees were fellow-servants, but think that it was a question of fact which should, under the general rule in such cases, have been submitted to the jury.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1897. Reversed and remanded. Opinion filed March 24, 1898.

FRANK J. PALT and MATTHEWS & HUGHES, attorneys for appellant.

WALKER & EDDY, attorneys for appellees.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

Appellant was injured while in the employ of appellees, by being crushed between two box cars, on August 28, 1894, and brought suit to recover damages. On a trial before the court and a jury, at the close of plaintiff's evidence, the court instructed a verdict for defendants, and rendered judgment thereon, from which plaintiff appeals.

The questions presented are, first, was appellant, as a matter of law under the evidence, a fellow-servant of the persons causing the injury, and thus debarred from recovering; and second, was appellant guilty of contributory negligence, as a matter of law?

The first count of the declaration charged that defendants employed an incompetent and careless foreman, who negligently and forcibly pushed and compelled plaintiff to uncouple two cars in a place of great danger, etc. This count was not proved.

A first additional count, after setting out the situation of the cars, and a stationary engine with ropes or cables attached, and other appliances necessary to move the cars, and plaintiff's duty with reference to unloading the cars and in moving, coupling and uncoupling the same, and that the bumper was broken off and missing from one of the cars, alleges that " the foreman, well knowing that it was dangerous to go between said cars, from one of which the bumper was broken off, when the cars were in motion, or were about to be set in motion, ordered and commanded the plaintiff to go between the cars and to unhook the chain, and while the plaintiff, in the exercise of all due care, was between the cars trying to unhook the chain, the foreman suddenly and without any signal or warning to plaintiff, negligently, carelessly and recklessly started the engine and set the cars in motion; and by means of the said negligence, carelessness and recklessness of the foreman in so starting the cars, plaintiff was caught between the cars and crushed, bruised and hurt."

A second additional count, after setting out the situation substantially as in the first additional count, alleges that " by reason of the said bumper or coupler being broken off, it was possible for the cars to come so close together that there would not be sufficient space between the cars for a man to stand upright, and so that a man standing upright between the cars would be crushed. A rope or cable from the stationary engine was fastened to the second or furthest car from said engine, by means of which rope or cable power was communicated from the engine to the cars, and the cars were moved. There was a foreman of the defendants in charge of and in control of plaintiff and the other said servants of the defendants engaged in the work of moving and unloading said cars, who was directing the

Kolb v. Carrington.

work and who was not a fellow-servant with the plaintiff and the other said servants of the defendants. And the foreman, well knowing that the bumper was broken off from one of said cars, and well knowing that it would be dangerous for a man to be between said cars when said cars were in motion, or when they were about to be set in motion, negligently, carelessly and recklessly ordered the plaintiff to go between said cars and to unhook said chain when he was about to start said cars. And the plaintiff, in obedience to said order and while exercising all due care for his own safety, went between said cars and tried to unhook said chain. And the foreman knowing that the plaintiff was between the cars, and knowing the danger of his position between said cars, suddenly and without any warning or signal to plaintiff, negligently, carelessly and recklessly started the said engine and set said cars in motion. And by means of the said negligent, careless and reckless order of the foreman in so sending the plaintiff between the cars when he, the said foreman, was about to set said cars in motion, and of the said negligence, carelessness and recklessness of the foreman in so starting said cars, the plaintiff was caught between said cars and crushed, bruised and hurt," etc.

The evidence is not altogether clear on all points, but we think tends to establish the allegations of these two counts, and is in substance, viz.:

Appellant, with three other employes of appellees, named Wandrach, Kreuger and Gallagher, were engaged on the day of the accident at appellee's elevator in shoveling grain and in placing cars containing the grain in position so the grain could be put into the hoppers of the elevator. Appellant had been engaged in this business for some two years, and was familiar with the work. There was a stationary engine a little distance from the elevator, and between the engine and the elevator were tracks on which cars were moved to the hoppers as required for unloading. These cars were ordinary box cars. A rope was attached to the engine for the purpose of moving the cars. Gallagher, when

with the men, directed their movements, and also started the engine to move a car. At the time of the accident there were two box cars loaded with grain standing on the track. The coupling between these cars had been broken and the cars were fastened together with a chain, one end of which was fastened to the coupling pin of the forward car, and the other end was fastened at some point under the rear car. The sag and weight of the chain made it difficult to draw the coupling pin fastening the chain to the forward car.

Wandrach tried to pull the pin first, but did not succeed. Kolb, the appellant, who had been shoveling grain from another car, then came up. Kolb did not see Wandrach try to pull the pin. Kolb stood by Gallagher, and Gallagher told him to go ahead and pull the pin. Kolb and Gallagher were about thirteen feet from the pin. The rope was hitched to the car farthest from the engine. The cars were about thirteen feet from the engine, and were about three feet apart. Gallagher was standing on a little platform or sidewalk outside of the engine. Gallagher could see the cars. But Kolb, after he went between the cars, could not see Gallagher. Kolb, when he came up, was told by Gallagher to go between the cars and pull the pin (so that the cars could be separated to go to different hoppers). Kolb, as directed, went between the cars for that purpose, and before he emerged, Gallagher, without any warning to appellant, caused the engine by means of a rope fastened to the farthest car, to pull that car against Kolb, crushing him between that and the other car. There is a conflict in the evidence as to whether Kolb, when he went in, knew the cars were fastened together with a chain which was tight, but he knew the bumper of one of the cars was broken, and we think the weight of the evidence shows he knew the cars were fastened together by the chain.

One DeGrot, superintendent for appellees, employed appellant and told him to obey the orders of Gallagher, who was foreman. Gallagher had no power to hire or discharge men.

Wandrach testified that he told Kolb to look out, that he

would get "squashed" between the cars, and that Kolb said in reply they were only going to pull the cars loose so the chain would get loosened up.  Kolb testified, however, that Wandrach told him nothing.

That Kolb was subject to the orders of Gallagher, the foreman, and was injured while acting in obedience to Gallagher's orders, is clear.  The fact that Gallagher had no power to hire or discharge men is not conclusive on the question of his being a fellow-servant of Kolb, and we can not say, from the whole evidence, as a matter of law, that Gallagher was the fellow-servant of Kolb, but think, if at all material in this case, of which there is doubt, it was a question of fact which should have been submitted to the jury.  The general rule is that such a question is one of fact for the jury.  North Chicago Rolling Mill Co. v. Johnson, 114 Ill. 57; Chicago & A. R. R. Co. v. O'Brien, 155 Ill. 630; Chicago & A. R. R. Co. v. May, 108 Ill. 288; Wenona Coal Co. v. Holmquist, 152 Ill. 581; Consolidated Coal Co. v. Scheiber, 167 Ill. 539.

It seems to us unnecessary to go outside of our own Supreme Court for authorities on the question of fellow-servant, believing, as we do, that the above cases lay down principles by which we may be guided in determining the case at bar.

In the Holmquist case, *supra*, the court says:  " Where a master confers authority upon one of his employes to take charge and control of a certain class of workmen in carrying on some particular branch of his business, such employe, in governing and directing the movements of the men under his charge, with respect to that branch of the business, is the direct representative of the master, and not a mere fellow-servant; all commands given by him, within the scope of his authority, are in law the commands of the master, and if he is guilty of a negligent and unskillful exercise of his power and authority over the men under his charge, the master must be held to answer. (Chicago & A. R. R. Co. v. May, 108 Ill. 288.)  Whether the shipping clerk or those acting under his direction were fellow-servants with the

appellee, is a question of fact for the jury, although the definition of fellow-servants may be a question of law:"

In the May case, *supra*, relied on by appellees' counsel, the court say : " The mere fact that the servant exercising such authority sometimes or generally labors with the others as a common hand, will not of itself exonerate the master from liability for the former's negligence in the exercise of his authority over the others. Every case in this respect must depend upon its own circumstances. * * * When the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his co-laborers, the master will be liable. * * * When a railway company confers authority upon one of its employes to take charge and control of a gang of men in carrying on some particular branch of business, such employe, in governing and directing the movements of the men under his charge with respect to that branch of its business, is the direct representative of the company itself, and all commands given by him within the scope of his authority are, in law, the commands of the company, and the fact that he may have an immediate superior standing between him and the company, makes no difference in this respect. In exercising his power he does not stand upon the same plane with those under his control. His position is one of superiority. When he gives an order within the scope of his authority, if not manifestly unreasonable, those under his charge are bound to obey, at the peril of losing their situations, and such commands are, in contemplation of law, the commands of the company, and hence it is held responsible for the consequences." So in the case at bar, Gallagher had charge and control of appellant, and the other workmen engaged in appellees' employ, and governed and directed their movements. He was the direct representative of appellees. His orders were their orders. The fact that he worked with Kolb—co-operated with him in the work of moving the cars—will not of itself exonerate appellees, if he carelessly and negligently ordered appellant to go into a

dangerous place to perform his work, and the order was not manifestly an unreasonable one.    Appellant's duty was obedience to all orders of Gallagher which were not manifestly unreasonable, at the peril of losing his situation.

Appellant knew the manner of doing the work, it is true; must have seen that the bumper was broken; that a chain fastened the cars together which was tight; but he had no notice that Gallagher would pull the cars together.    Perhaps he thought the pin could be pulled without moving the cars.    He had a right to assume that after ordering him to go and pull the pin, Gallagher would not, if he moved the cars so as to slacken the chain, move them so far that they would come together.    In fact, Wandrach says that Kolb said they were only going to pull the cars loose so the chain would get loosened up.    As to whether Kolb was guilty of contributory negligence in going between the cars to pull the pin, even if he knew that the cars were going to be moved so as to loosen the chain, was, under all the facts, as it generally is, a question which should have been submitted to the jury.    We think it a matter on which the minds of fair-minded and honest men might reasonably come to different conclusions from the evidence.    North Chicago St. R. R. Co. v. Wiswell, 168 Ill. 615; Lehigh v. World's Col. Exp'n, 67 App. 27, and cases cited.

The judgment is reversed and the cause remanded.