NEW OMAHA THOMSON-HOUSTON ELECTRIC LIGHT COMPANY V. CHARLES BALDWIN.

FILED JUNE 19, 1901.    No. 9,632.

Commissioner's opinion, Department No. 1.

1. **Foreman Not Fellow Servant.** A foreman who has the management, superintendence and control of a branch of defendant's work is not a fellow servant with a workman under him. *Union P. R. Co. v. Doyle,* 50 Nebr., 555.

2. **Instruction as to Foregoing Not Erroneous.** There being no conflict in evidence as to powers and duties of the foreman in question, it is not error to instruct the jury that he was not a fellow servant, and that his negligence was imputable to the employer.

3. **Instruction: BURDEN OF PROOF.** Instruction that burden of proof of contributory negligence is on defendant unless it appears

from "plaintiff's own testimony," *held* to refer to all testimony produced on plaintiff's behalf.

4. **Instructions Not Prejudicial.** Certain instructions, while possibly not applicable, *held* not prejudicial, and evidence found sufficient to support the verdict.

ERROR from the district court for Douglas county. Tried below before SLABAUGH, J. *Affirmed.*

*Charles Offutt* and *W. W. Morsman,* for plaintiff in error.

*Acheson & Adams* and *E. H. Scott, contra.*

HASTINGS, C.

As a large part of the discussion in this case will relate to instructions given and refused in which the plaintiff in error is called defendant and defendant in error is called plaintiff, the parties will be designated in the same manner here as at the trial below.

It appears that the plaintiff, Baldwin, in September, 1896, was employed by the defendant electric light company as a "lineman"; that he worked under the immediate supervision of a foreman, one James Brinkman, and that he was directed by such foreman on the morning of September 9, 1896, to remove the arc lamps on Sixteenth street, in Omaha, in connection with another workman, who is described as a "groundman." Plaintiff's duty was to ascend an extension ladder placed against the sustaining wire of the lamp, taking with him a rope, put the latter over the sustaining wire, attach it to the lamp, and the "groundman" let it down by paying out the rope. They had reached the point on Sixteenth street opposite the alley between Harney and Howard streets when the foreman, Brinkman, arrived, ordering the other workman to another service, and himself engaged in assisting plaintiff in the removal of the lamp. There is some discrepancy in the testimony as to the precise occurrence, plaintiff's evidence indicating that Brinkman assisted in bringing up the ladder and adjusting it for the removal of this last

lamp, and Brinkman declaring that he came up after the
ladder was adjusted and while plaintiff was in the act of
loosening the lamp from the sustaining wire. Each state-
ment is to some extent corroborated. Plaintiff's evidence
is to the effect that he objected to the shortness of the lad-
der and asked that it be extended further, which could
have been easily done, and was told by the foreman that
it was high enough and directed by him to ascend; that he
went up, carrying a rope, passed the rope over the sus-
taining wire to which the lamp hung, tied it to the lamp,
loosened the lamp from its fastening and the foreman,
Brinkman, standing below and holding the rope, let it
down; that, when it reached the ground, Brinkman un-
tied the rope, but neglected to keep his hold upon it, and
by the taking off of the lamp's weight the wire to which
it had hung was allowed to spring up past the end of the
ladder, and plaintiff and the ladder were precipitated to
the pavement, with resulting injuries to plaintiff. The
"groundman" had been instructed by this very foreman
to keep hold of both ends of the rope till the "lineman"
reached the ground, to avoid exactly this danger. The
negligence asserted is that Brinkman, by his refusal to
extend the ladder and directing plaintiff to mount it, was
negligent, and in untying the rope and leaving the end
loose was again negligent, and that such negligence was
the immediate cause of the injury. It is conceded that the
evidence shows Brinkman to have been foreman. It was
conceded on the argument that there is evidence of negli-
gence on his part sufficient to uphold the verdict, if he is
to be deemed throughout the transaction a vice-principal
and responsibility for all his acts imputed to his employer.
It is contended on the part of defendant that, while Brink-
man in his general employment may have had some of the
duties of a vice-principal, yet, so far as his connection with
this injury is concerned, he was acting simply as a fellow
servant, and for any negligence committed in that capacity
defendant is not liable because plaintiff had assumed all
such risks. The trial court, however, adopted the view,

and so expressly instructed the jury, that Brinkman, being foreman and intrusted with the control and management of the work, in which plaintiff was employed, was so far identified with the defendant employer that his negligence was defendant's negligence. The giving of this instruction is the chief error complained of; the defendant asserting that it incorrectly states the law, because Brinkman, in his connection with this accident, was acting as a fellow workman, and because the question of whether or not he was a fellow servant is, at all events, not purely a question of law, but a mixed one of law and fact, and should have been submitted to the jury, as was specifically requested by defendant at the trial. The case seems to turn upon the question whether the court's view that Brinkman was a vice-principal throughout, and the sweeping instruction to that effect, can be sustained. In *Union Pacific R. Co. v. Doyle,* 50 Nebr., 555, this is said to be not always a question of law, nor always a question of fact, but generally a mixed one, and, ordinarily, no set rule can be laid down. In this present case, however, there seems to have been no dispute in the testimony as to Brinkman's duties and authority. The plaintiff seems to have been contented to show that Brinkman was foreman, exercising general control and supervision over the work for which plaintiff was employed as lineman. Defendant admits he was foreman, and shows clearly by its evidence that he had authority to "superintend, direct and control" the work. It appears that he employed and discharged men, but usually on consultation with the manager. No statement of either party as to what his powers and duties were seems to be contradicted even inferentially by the other. Under such circumstances, it seems clear that it was the duty of the court to say whether the evidence made of Brinkman a vice-principal or a mere fellow servant. This responsibility the court took, and declared in the eighth instruction that he was not a fellow servant, and that defendant was chargeable with any negligence of his. Was this error?

Counsel say that to review all the cases on this question would be a useless and almost superhuman task. We shall not attempt it any more than they have. Judge Dillon, in his widely influential article in 24 American Law Review, 175, says that a commanding position and a telescope, and not a microscope, are what is needed to reach a correct rule in this matter. For our part, we would gladly use both, if they would lead to our better enlightenment. We think, however, that where the courts are widely disagreeing and the same courts changing views from time to time and legislatures frequently altering the rule, the safe course for us is to learn what our state has done and follow it if we can.

An examination of our own cases seems to justify the trial court. There are widely different views as to what renders an employee such a vice-principal as.to take his acts out of the rule that an employee assumes the risk from negligence of his co-employees. The English cases seem to hold that there is practically no such doctrine of vice-principalship; that there are absolute duties resting upon the master whose non-performance, either by himself or by some one else, will render him liable. They are, apparently, a duty of providing reasonably safe materials and appliances, which is a continuing duty involving reasonably frequent inspections; the duty of providing a reasonably safe place to work and the duty of giving, or providing for, reasonable instructions to inexperienced employees placed in dangerous positions. These duties being discharged, any injury that arises in operation of the work out of negligence of employees imposes no liability upon the master. The English rule has been adopted in many of the states with the proviso that, where the performance of any of these absolute duties is delegated to third parties, those parties become, as to these duties, vice-principals, and their negligence in respect to such duties is the negligence of the principal. Of this view of the principal's liability the courts of Massachusetts have been strong exponents, manifestly under the influence of Chief Justice Shaw, in

*Farwell v. Boston & W. R. Corp.,* 4 Met. [Mass.], 49, and the English decisions. The courts of Ohio, however, early adopted a different view, deriving the liability for the acts of a vice-principal, not from the fact of absolute duties devolving upon him, but from the fact that he was given authority and control, and must be held in his actions to immediately represent the employer, and his negligence to be imputed to his principal. *Little Miami R. Co. v. Stevens,* 20 Ohio, 415; *Cleveland, C. & C. R. Co. v. Keary,* 3 Ohio St., 201; *Whaalan v. Mad River R. & L. E. Co.,* 8 Ohio St., 251; *Berea Stone Co. v. Kraft,* 31 Ohio St., 287. This doctrine was, in the case of *Chicago, St. P., M. & O. R. Co. v. Lundstrom,* 16 Nebr., 254, expressly adopted in this state. In that case the railroad company was held liable for the negligence of one Carnes, the conductor of a construction train, in sending his men into a cut to clear away snow without maintaining a suitable watch, or giving any signal of an approaching train. For his negligence in that respect resulting in injury to plaintiff's intestate, the railroad company was held liable. This holding has been uniformly adhered to.

In *Burlington & M. R. R. Co. v. Crockett,* 19 Nebr., 138, Crockett had been ordered by the foreman in charge of a wrecking train to clear the dirt away around a car which had been derailed by a fall of earth from a high bank; no watch was kept to notify men shoveling below when a fall of dirt was likely, and for the foreman's negligence in that respect the company was held liable.

In *Sioux C. & P. R. Co. v. Smith,* 22 Nebr., 775, a section foreman had directed a workman upon his hand-car to hold to the rear of a freight train in riding back from work and when the freight train threatened to acquire too high a rate of speed for safety to the hand-car and its occupants, directed him to let go, and at the same time applied the brake to the hand-car, but his order was not heard, and the man holding to the rear of the freight train was injured. A jury having found that this was negligence, it was held that it was the act of a vice-principal and that plaintiff could recover.

In *Chicago, B. & Q. R. Co. v. Sullivan,* 27 Nebr., 673, Sullivan was placed for instruction under the employee whom he was about to succeed as a car-repairer, and while working under the latter's direction was sent under some cars and was injured by a train backing up against that under which he was at work. The injury having been found due to negligence of the employee under whose direction Sullivan was working, it was held that he could recover, because as to him the directing person was a vice-principal.

In *Crystal Ice Co. v. Sherlock,* 37 Nebr., 19, where defendant's foreman had ordered an employee to loosen one of the ice blocks which had stuck fast in the chute, and while plaintiff was doing this, without warning, let down another heavy piece of ice, it was expressly held that the employer was liable for the foreman's negligence in dropping the second piece of ice upon the plaintiff, and could not shelter itself behind the proposition that in handling the second piece of ice the foreman was not exercising any power or duty of supervision.

In *Hammond v. Johnson,* 38 Nebr., 244, a co-servant, whose duty was to assign to others horses for use in defendant's employment, was the vice-principal with respect to one to whom he had assigned a vicious horse, and who was injured in consequence of it, because "his language was the language of one in authority." He told the plaintiff he could take that horse or quit work.

In *Union P. R. Co. v. Doyle,* 50 Nebr., 555, the latter was a section-hand under the control of a foreman, and the court holds that by virtue of the fact that Doyle was under the direction of a "foreman, who superintends, manages, controls and directs when, how and where the work shall be done, this foreman is not made by the rules of the railroad company a fellow servant with the men under his direction, but he is responsible for his conduct to the road-master. * * * We are not prepared to adopt the doctrine that an employee, to become a vice-principal as to his co-employee, must be the 'chief of a separate and distinct

department or branch of the business of his employer.' The court did not err in refusing to instruct the jury that Forrest and Doyle were fellow servants."

In *Clark v. Hughes,* 51 Nebr., 780, the answer contained the admission, "on the 16th day of January, 1894, the above named plaintiff was in the employ of defendants as brakeman on freight train No. 16 on said road, and that said train was under the control of conductor E. W. Meyers." The court, having referred to some of the above cases, adds: "Under the authorities just cited, the admission in the quotation just made obviated the necessity of proof to establish the relation of servant and vice-principal as between the brakeman and the conductor."

From the foregoing cases it seems clear that whatever may be the rule elsewhere, in this court the liability of the employer for the actions of a vice-principal grows out of the fact that he is directly intrusted with authority; that the movements of those under him are directed by him, and that he is held to be the direct representative of his principal. If in *Clark v. Hughes, supra,* the mere admission of the fact that the party in fault was conductor was sufficient to do away with all proof that he was a vice-principal, it would seem in this case that the same effect should be given to the admission that the party in fault was foreman, and to the uncontradicted evidence of his authority, and that the court was warranted in instructing that he was also a vice-principal. If this is conceded, we are of the opinion that all the other claims of error in this case fall to the ground with this one. Of course, if the learned trial judge was warranted in instructing that this foreman was a vice-principal, he was warranted in rejecting all instructions drawn from the point of view of his being anything else.

We do not find any prejudicial error in the instruction that the burden of proof to show contributory negligence is on defendant, unless it appears from "plaintiff's own testimony." This expression does not seem to us fairly to mean, or likely to have been taken to mean, testimony

which plaintiff himself gave on the stand. It would naturally refer to all produced at the trial on his behalf. But if it did not, we are not pointed out any other portion of the evidence on his side which supports the inference of his negligence. If there was none, the restriction was not prejudicial, granting there was such a restriction.

The third claim of error is in instructions 13 and 14, endeavoring to apply to this case the rule that contributory negligence would not prevent recovery if reasonable care on the part of defendant would, after the discovery of such· negligence of plaintiff, have prevented its consequences. These two instructions were apparently intended to inform the jury that if they found plaintiff negligent in going up an insufficiently extended ladder, still, if Brinkman loosened the rope after plaintiff was up and Brinkman knew it and such act of Brinkman's caused the injury, plaintiff could recover, if at that moment exercising due care. This was correct, if we find the act of Brinkman in taking off the lamp and loosening the rope the act of the employer. It was not correct if we allow Brinkman a dual capacity, a vice-principal when giving directions, and a mere fellow workman when taking off the lamp. There are many authorities for such a distinction and for a dual capacity of vice-principal and workman on the part of one who both directs and assists. A notable recent case is *Barnicle v. Connor,* 81 N. W. Rep. [Ia.], 452; *Crispin v. Babbitt,* 81 N. Y., 516, is another. Generally they will be found to be rendered by courts which adopt the restricted rule that vice-principalship depends upon the delegation of absolute duties. It is a doctrine that is evidently not compatible with the decisions in *Sioux C. & P. R. Co. v. Smith, Crystal Ice Co. v. Sherlock, Burlington & M. R. R. Co. v. Crockett* and *Chicago, St. P., M. & O. R. Co. v. Lundstrom, ut supra.* In each of these cases the defendant, employer, was held liable for imputed negligence, on the part of one to whom supervision and direction were intrusted, in respect to other matters than the mere giving of such directions. In this state it is

clear that the vice-principal's character as such comes from his authority and his direct representation of his master. If that is the source of liability for his acts, evidently he represents the master as much in ordering away the cautious and instructed lineman and assuming his place as in anything else. We can not distinguish this case from *Crystal Ice Co. v. Sherlock, supra,* where the injury came from the foreman's letting down a second piece of ice while the workman was in the chute loosening the lodged one; nor from *Berea Stone Co. v. Kraft,* 31 Ohio St., 287, where the foreman's attaching the hard stone grapple to the soft stone permitted the latter to slip and harmed the fellow workman. What has just been said also disposes of the claim of contributory negligence. There are many cases holding that one who obeys the command of a superior, not evidently endangering life or limb, is not necessarily guilty of contributory negligence because the one issuing the command is. But plaintiff, if chargeable with contributory negligence in going up an insufficiently extended ladder, is not chargeable with helping to let loose the rope. If this was the act of a vice-principal, then the question of contributory negligence should have gone, as it did, to the jury. We are thus again brought back to the fact that the instructions in effect tell the jury that the act of loosening the rope, if under all the circumstances they find it negligent, was imputable to the employer. The federal courts hold that this question of vice-principalship is a matter of general law, as to which they are not bound by state decisions. *Hunt v. Hurd,* 39 C. C. A., 226. It is, therefore, a matter of much regret that we should be compelled to recognize that in the federal courts, since the express overruling of *Chicago, M. & St. P. R. Co. v. Ross,* 112 U. S., 377, in *New England R. Co. v. Conroy,* 175 U. S., 323, an opposite conclusion to ours would be reached. In the case of *Alaska Mining Co. v. Whelan,* 168 U. S., 86, judgment for a miner, who had been set to work breaking ore at the head of a chute by the mine foreman and injured through the drawing by order of the same foreman of the

gate of the chute without customary warning, was reversed and the case dismissed, because the injury was due to the negligence of the foreman and he was held to be a fellow servant. The uncertainties of law are great enough without having one rule avowed and upheld in our United States courts and another one here in the state capitol. We do not, however, in view of the legislative provisions which have so often followed the adoption of English rules in this matter, think it desirable to change the rule of this state, which is as stated by Mr. McKinney in his Law of Fellow Servants [1890 ed.], p. 136: "The Ohio cases are followed in this state, and the limitation therefore prevails to its fullest extent." The liability established in this case by the instructions and the verdict under them seems precisely what was intended to be fixed by section 2 of the English "Employers' Liability Act." The Massachusetts act of 1893 seems to have intended a similar effect. Both seem to have been in a measure defeated in their results by unfriendly action of the courts. But while the current of legislation is steadily towards the position heretofore held by this court, there seems small reason to change it in the opposite direction. It is to be said, too, that the federal decisions are much weakened by the fact that they are obliged to admit that there is a degree of authority that makes the employee an *alter ego* for his principal, but they have set up no limiting principle to determine when this is and is not the case. Our court has said the satisfactory evidence of vice-principalship is his "supervision, control" and "subjection to his orders and directions." *Union P. R. Co. v. Doyle,* 50 Nebr., 555.

For these reasons it is recommended that the judgment below should be affirmed.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion the judgment of the district court is

AFFIRMED.