DANIEL O'NIEL v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 28, 1900.

Nos. 12,075—(78).

**Negligence of Fellow Servant—Risk of Service.**

Where a servant is injured, being caught by a bolt which remains in a timber in the work of tearing away a portion of a bridge, he assumes the danger of the negligence of his fellow servants, as well as the apparent and probable risks of the service in which he is engaged.

**Railway—Road Master—Vice Principal.**

The road master of a railroad company, directing such work, as in this case, is not the vice principal of the employer to the extent that his omission to give a particular warning of a detail thereof which portends danger would render the master liable for his omissions in that respect.

Action in the district court for Polk county to recover $5,000 for personal injuries. The case was tried before Watts, J., and a jury, which rendered a verdict in favor of plaintiff for $850. The court made an order denying defendant's motion for judgment notwithstanding the verdict, but granting a new trial unless plaintiff consent to a reduction of the verdict to $500, from which order, plaintiff having consented, defendant appealed. Reversed.

*Wm. R. Begg,* for appellant.

*H. Steenerson* and *W. E. Rowe,* for respondent.

[1] Reported in 82 N. W. 1086.

LOVELY, J.[2]

Action for injuries sustained by plaintiff while working as a common laborer on defendant's road. Plaintiff had a verdict. Upon motion for a new trial the same was denied, conditioned upon the reduction of the recovery, to which he consented. Thereupon defendant appeals to this court.

At a place where defendant's road crossed a ravine on a trestle, the same was filled in by substituting an embankment of earth to support the track in place of the trestle. This undertaking seems to have been carried out as a part of the work of surfacing a considerable portion of the road, wherein a gang of thirty-five men were working under the directions of defendant's road master. After the trestle had been filled in very nearly to the surface of the track, some twenty men of the gang were detached from the rest of the crew, and required to go upon the embankment to remove and throw the stringers upon which the ties rested over the same, evidently to make room for a further fill, surfacing other ties, and a new track. In the original construction of the trestle the ties rested upon the stringers, which were forty feet in length, running lengthwise, and placed upon cross timbers beneath. Upon these stringers the ties had been laid transversely. At regular intervals long iron bolts or spikes had been driven through the ties and stringers, extending into the timbers beneath, thereby holding secure in combination the ties, stringers, and timbers. In the work in question the track was pushed to one side, the bolts were drawn, when the stringers would be moved to the edge of the embankment, and either thrown or allowed to roll down the same.

It is claimed by the plaintiff that jackscrews were used to withdraw the bolts from the stringers and timbers into which they extended, and that he was engaged in placing the jackscrews, but had nothing to do with the work of drawing the bolts. It also appears that all the bolts were drawn, except one at the end of one of the stringers, when, by order of the road master, plaintiff was called to take hold of this stringer at the place of the undrawn bolt, and, with a number of the other men, roll it over the embankment; in

[2] BROWN, J., absent, took no part.

obeying this direction he sustained the injuries of which he complains. It appears that the upper end of the bolt protruded some inches from the surface of the stringer; and while the plaintiff was at the place where this undrawn bolt was, in attempting, with the other men, to turn it over, he was caught by the protruding end, and in the usual movements that followed in moving the stringer was, in consequence, thrown with some violence down the embankment.

The case was submitted to the jury solely upon the question whether the defendant's road master, Hess, was a vice principal of the defendant, and was negligent in not giving to the plaintiff a particular warning of the fact that the bolt in question had not been withdrawn, and was liable to injure him. It seems to have been claimed by counsel for plaintiff at the trial that it was the duty of the road master to have given him warning of the precise danger which was liable to and did cause the accident. The road master and a foreman who was present both stated that a general warning to look out for these bolts had been given to all the men at work on the embankment. Conceding that the jury had a right to disregard this testimony, the only evidence remaining to show that no warning of danger was given is that of the plaintiff himself in answer to a question of his counsel, "Did you hear him [Hess] say anything about looking out for that bolt?" referring to the bolt which caught and injured him; to which the plaintiff answered, "No, sir; I did not;" and it must be assumed, the burden being upon the plaintiff, that this evidence, under the instructions of the court, established in the minds of the jury the failure of the defendant to give warning through the road master, which supported the recovery.

This clearly involves a palpable misunderstanding of the duty of a vice principal in any supposable case, for a vice principal can only, in any event, represent the master in the performance of some general function of the work in which the employee is engaged. The logical result of this claim in behalf of plaintiff would require from the vice principal not only a general warning of danger in such a case, but notice of every hazard that might occur in

the conduct of the work, extending through all its details, and would lead to the absurd and illogical result that there must be present at all times the master or his representative for every servant. Such a claim defeats itself.

It has been settled by this court that an employee becomes a vice principal, as respects another servant, only when he is intrusted with the performance of some absolute and personal duty of the master himself, or the general management and control of the master's business, or some branch of it. Brown v. Minneapolis & St. L. Ry. Co., 31 Minn. 553, 18 N. W. 834. It was held in an earlier case, not distinguishable in principle from this, that where the negligence of a road master occasioned serious injury to a servant under him, and the road master was a competent and proper person for the work, such road master was a fellow servant in the task of raising wrecked freight cars (Brown v. Winona & St. P. R. Co., 27 Minn. 162, 6 N. W. 484). The distinctions which exist between a superior servant and a vice principal are clearly designated and distinguished in a still later case, which holds that such superiority of rank in the service does not indicate the relation of vice principal between such superior servant and the one who works under him. The relation referred to arises usually from the peculiar character of the services rendered rather than the grade of employment. Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020.

And it follows that, if the evidence in this case tends to show that Hess had knowledge of the undrawn bolt, and failed to warn plaintiff of that fact, such failure was the omission of a fellow servant; also that defendant is not chargeable where the common-law rule prevails as to the right to recover of the master for the acts of a fellow servant; and it only becomes necessary to inquire further whether the failure on the part of Hess to tell plaintiff to look out for the undrawn bolt was negligence under the so-called "Fellow-Servants Act" (G. S. 1894, § 2701). But this statute does not apply, for clearly the business in which the road master and other employees were engaged did not, under the decisions of this court, subject plaintiff distinctively to railroad hazards, since the risk he incurred was no other or different in kind in other employ-

ments than railroading. Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn. 249, 41 N. W. 974; Johnson v. St. Paul & D. R. Co., 43 Minn. 222, 45 N. W. 156; Pearson v. Chicago, M. & St. P. Ry. Co., 47 Minn. 9, 49 N. W. 302; G. S. 1894, § 2701; Weisel v. Eastern Ry. Co., 79 Minn. 245, 82 N. W. 576.

The plaintiff was an experienced section man of thirty-five years. He had been engaged in the surfacing work referred to some three weeks before he was hurt, had been in the railroad service as a section man several years, and there is nothing to show that he was not fully aware of the manner in which the work was being conducted in all its various details. He simply did not know of the protruding bolt that caused the accident, which he did not notice at the time, or he could, as he says, have easily avoided the injury he received. But the manner of conducting the work in which he was engaged was apparent to any person of ordinary intelligence. The peculiar dangers that arose from the demolition of the portion of the bridge structure which was being taken apart and removed were obvious to any one who could use his senses, and indicated unseen risks and dangers from protruding bolts at almost every moment, the risk of which had been clearly assumed by him in connection with the other hazards of the undertaking in which he was engaged, whether any fellow servant working with him was or was not a vice principal. Walsh v. St. Paul & D. R. Co., 27 Minn. 367, 8 N. W. 145; Olson v. McMullen, 34 Minn. 94, 24 N. W. 318; Berger v. St. Paul, M. & M. Ry. Co., 39 Minn. 78, 38 N. W. 814; Quick v. Minnesota Iron Co., 47 Minn. 361, 50 N. W. 244; Scharenbroich v. St. Cloud F. W. Co., 59 Minn. 116, 60 N. W. 1093; Smith v. Tromanhauser, 63 Minn. 98, 65 N. W. 144.

Order reversed, and a new trial granted.