## FRANK M. BARRETT v. TIMOTHY REARDON.[1]

### July 14, 1905.

### Nos. 14,347—(120).

**Master and Servant.**

The master, who held a contract for that purpose, delegated to his foreman the duty of removing the interior of the "Old Round Tower" at Fort Snelling, with the right of general supervision and to employ and discharge men.

Evidence was introduced tending to show that while engaged in removing the upper floor, all support from below having been removed, the foreman directed plaintiff to remove the boards which had been loosened from the joists and throw them over the outside of the tower, and while so engaged the foreman either in person or by direction caused certain of the joists to be loosened, which so weakened the support of the floor that plaintiff was precipitated with a certain portion of the floor to the ground below. *Held*:

1. It was conclusively shown by the evidence that the foreman was a vice principal.

2. It was a question of fact for the jury to decide whether or not the injury was caused on account of the negligence of the foreman in giving the order and in loosening the joists.

3. It was a question of fact whether or not plaintiff was guilty of contributory negligence, or assumed the risks under the circumstances.

Action in the district court for Ramsey county to recover $5,000 for personal injuries. The case was tried before Bunn, J., and a jury, which rendered a verdict in favor of plaintiff for $400. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

[1] Reported in 104 N. W. 309.

*C. D. & R. D. O'Brien* and *Patrick J. Ryan,* for appellant.
*Sheehan & Keefe,* for respondent.

LEWIS, J.

Defendant, a general contractor and builder, was engaged in taking out the interior of the "Old Round Tower" at Fort Snelling for the purpose of remodeling and constructing it as an office building. Plaintiff was employed as one of the workmen, and brought this action to recover for injuries received. Defendant appealed from an order denying his motion for judgment notwithstanding the verdict returned, or for a new trial.

The interior of the building was constructed many years ago, and consisted of three floors, one at the bottom, one midway, and one at the top, connected by a stairway. A man by the name of Mertz was put in charge by defendant, and the work was carried on under his general direction. The work was commenced by tearing out the bottom floor and stairway, then the second floor and the stairway leading to the third floor, access to which was had by means of ladders through the opening where the stairway had been. On the day of the accident the men went up through the hatchway to the third floor, and, after removing the roof, they went to work taking up the flooring and joists of the third floor, which was constructed in the following manner: A beam about eight or ten inches square ran from wall to wall, through the middle of the tower. Joists about two by ten inches were laid from this sill both ways to the wall, the outer ends of the joists resting in the wall and the other ends overlapping and resting on the sill. The distance across was about twenty-four feet, and the ends of the joists meeting on the sill were nailed together and also to the sill. A hatchway, eight by four feet, was constructed in the southeasterly side of the floor. In forming this hatchway about four feet was sawed off the ends of several of the joists, and a header nailed in, the ends of which were nailed to the long joists at the northerly and southerly sides of the hatchway. The sill thus formed the westerly side of the hatchway.

Plaintiff was an ordinary laborer, of average intelligence, and was not a carpenter or skilled mechanic. Together with the two other workmen, who were carpenters, plaintiff was engaged in tearing the

floor from the joists with a pick, and in loosening the joists from the sill and from each other, when Mertz came up through the hatchway on the ladder for the purpose of directing and helping in the work. Plaintiff at that time was prying joists apart with a pick and dropping them to the ground. He let one fall near a carpenter's horse, and Mertz warned him about breaking it, but plaintiff let the next joist drop in the same way, whereupon Mertz said,

> Give me that pick, and you go and help Al carry those boards off.

At that time all the floor boards had been taken up on the west side of the sill, and all the boards had been loosened on the east side, where the hatchway was, but had not been removed. The boards were carried over to the south side of the tower and dropped over the wall to the ground, men being at work on the outside of the tower on the north side. Plaintiff, after being so directed, went to the northeasterly side of the tower and picked up loose boards and walked to the south side, keeping on the easterly side of the hatchway, and dropped the boards over on the outside. He made three trips, carrying boards in his hands each time, walking between the hatchway and the outside wall, but just how close does not appear. Plaintiff testified that he was walking on the loose boards laid across the joists; that he made three trips, and when returning the fourth time with a board, and opposite the hatchway, the short joists on which he was walking gave way, and that part of the flooring went down, precipitating him to the ground. Mertz and another workman testified that while plaintiff was carrying boards they continued to pry the joists apart where they met at the sill, and to pry them loose from the sill. This evidence tended to show that the process of prying up and loosening the joists had the effect of weakening the support of the short joists. Another fact to be mentioned in this connection was that when the second floor and stairway leading to the third floor was taken out certain props or braces were removed which held up the short joists mentioned, and the evidence indicates that the effect of their removal was also to weaken the support of the floor above at that point. Defendant submits upon this appeal that the evidence conclusively shows he was not guilty

of negligence, and that plaintiff was guilty of contributory negligence or assumed the risks.

1. We are not inclined to regard this case as within the rule that it was the master's duty to continuously exercise supervision over the progress of the work of demolition, and to provide the employee with a reasonably safe place to carry on the work. It would seem that the man in charge of the work adopted the more dangerous system in taking out the interior of the tower by commencing at the bottom instead of the top, but it is evident from the nature of the work to be done that at the time of plaintiff's employment there was no thought by either party that a reasonably safe place for the workmen would be provided by the master from time to time as the work of demolition proceeded. If defendant is liable at all in this case, it is upon the theory that the foreman, Mertz, was a vice principal, and at the time of the accident had assumed personal direction and control of the work, and that plaintiff was injured while acting in obedience to orders from him. We have no hesitancy in deciding that Mertz was a vice principal. The evidence shows he had entire charge, employed the men, laid out the plan, directed the progress of the work, and defendant exercised no personal supervision. Mertz was clothed with full authority as to the control and direction of the men and the work, and apparently exercised the same supervision defendant would have had he been there himself. A vice principal may be created if the master imposes upon him, as his representative, the duty of carrying out a certain line of conduct. Mertz was the only person representing defendant, having been placed in charge, with general authority to go ahead and tear down the interior of the tower. In legal effect, he was the master for the purpose in hand.

Many cases have arisen where the liability of the master is based upon the principle that from the nature of the work or business the duty rests upon the master to provide a safe place for his workmen, or to furnish a proper plan or system. Such cases are Carlson v. N. W. Tel. Exch. Co., 63 Minn. 428, 65 N. W. 914; Stahl v. City of Duluth, 71 Minn. 341, 74 N. W. 143; Hagerty v. Evans, 87 Minn. 135, 92 N. W. 399; Carlson v. Haglin & Peavey Duluth Terminal, supra, page 347. The doctrine of these cases does not cover the en-

tire subject. Although not his duty to do so, yet the master may, for reasons of his own, assume personal charge and direction of the movements of his men, and in such case he is responsible to them for his own negligent acts; and if, instead of attending to the business personally, the master sends another in his stead to represent him and carry out his purposes, upon what theory may he raise the defense of fellow servant, if in the conduct of the business such representative negligently causes injury to an employee who is acting in obedience to the directions of his superior? If such representative has authority to issue orders concerning the movements of the men, it follows that while engaged in so doing an employee may rest assured that his superior will exercise reasonable care to protect him, and will not render unsafe those conditions necessary to a compliance with directions given him.

Under the circumstances of this case Mertz did not change from a vice principal to a fellow servant when he took the pick from respondent's hands and began to knock out the foundation upon which plaintiff stood while acting in response to the order given. Under such conditions the mere fact that Mertz was temporarily engaged with the other workmen in demolishing the interior of the tower did not constitute him a fellow servant. Holman v. Kempe, 70 Minn. 422, 73 N. W. 186; Abel v. Butler-Ryan Co., 66 Minn. 16, 68 N. W. 205 (where the question of vice principalship was a fact for the jury); Borgerson v. Cook-Stone Co., 91 Minn. 91, 97 N. W. 734. In O'Niel v. Great Northern Ry. Co., 80 Minn. 27, 82 N. W. 1086, the facts were entirely different. The servant was not acting pursuant to a specific order of the foreman, and it was held that the danger incident to handling timbers with protruding bolts on a bridge which the employees were demolishing was incidental to the business in which they were engaged, and with reference to which the servant assumed the risk. Upon this subject, see also Colorado v. O'Brien, 16 Colo. 219, 27 Pac. 701; Illinois v. Schymanowski, 162 Ill. 447, 44 N. E. 876; Hawkins v. Johnson, 105 Ind. 29, 4 N. E. 172; Shortel v. City, 104 Mo. 114, 16 S. W. 397; Cox v. Syenite, 39 Mo. App. 424.

No doubt the removal of the braces underneath had, to some extent, weakened the floor on which they were at work; yet the evidence seems

to show that the immediate cause was the loosening of the long joists. At least a state of facts was presented which made it a question for the jury to determine what was the cause of plaintiff's fall, and, if it be: true that Mertz assumed charge of the work, and personally directed plaintiff to go upon the easterly side of the sill and walk back and forth throwing off boards, and Mertz took the pick from plaintiff and loosened the joists, or directed it to be done, thereby weakening the floor supports, then such act was not that of a fellow servant. Under such circumstances it was the duty of Mertz to inform plaintiff, and put him upon his guard, before loosening the joists. Here was a question for the jury on the evidence.

2. The evidence does not conclusively show that plaintiff was guilty of contributory negligence, or that he assumed the risks. At the time Mertz appeared and took part in the work, plaintiff was directed to leave the work he was doing and go and assist another employee in carrying off boards. He was obliged to obey the foreman's orders, and there was nothing in particular to call his attention to the danger of so doing. He had a right to rely upon his superior, and that he would at least not do anything to render the situation unsafe, although they were engaged in the dangerous work of removing the foundation on which they stood. Whether he was exercising ordinary care and assumed the risks incident to the work were questions of fact.

Order affirmed.

BROWN, J. (dissenting).

I am unable to reconcile the decision in this case with the rule laid down in O'Niel v. Great Northern Ry. Co., 80 Minn. 27, 82 N. W. 1086, or the general principles of the law of master and servant as embodied in the doctrine of vice principal. With no personal or absolute duty of the master to perform, Mertz, the foreman, while engaged with the other employees in demolishing the structure, was a fellow servant.