VITO DIZONNO v. GREAT NORTHERN RAILWAY COMPANY.[1]

January 17, 1908.

Nos. 15,396—(142).

**Vice Principal.**

The foreman of a gang of workmen, engaged in removing iron plates from an overturned freight car, ordered a workman to go to a certain point to work, which required him to step on and pass over a pile of iron plates. While the workman was in the act of passing over the plates, the foreman, knowing that he was there, raised one of the plates so as to cause it to slide from the pile and injure the workman. *Held*, that the foreman acted as a vice principal in ordering the workman to pass over the pile of plates, and in negligently moving the plates, and thus increasing the danger of the situation.

Action in the district court for Ramsey county to recover $20,000 damages for personal injuries caused by the alleged negligence of defendant's servant while plaintiff was in its employ. The case was tried before Bunn, J., and a jury which returned a verdict in favor of plaintiff for $3,000. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*M. L. Countryman,* for appellant.
*Edwin S. Thompson,* for respondent.

ELLIOTT, J.

A flat car, known as a "gondola car," belonging to the Great Northern Railway Company, loaded with steel plates, tipped over and caused the wreck of a freight train. The car fell outside the rails, and the track was soon cleared, leaving the car on its side. The steel plates with which the car was loaded were about thirty feet long, five feet wide, and half an inch thick. In this car there were thirty such plates laid flat on the top of each other. Each plate weighed about a ton. When the car tipped over it rested upon its edge or side. The plates slid out, and rested partly on the ground and partly on the edge of the car. About a dozen of the top plates slid further

[1] Reported in 114 N. W. 736.

out, and left eighteen or twenty plates resting flat on the side of the car and extending a portion of their length and breadth upon the ground. The car could not be moved until these plates were taken away, and this was attempted in the following manner: The morning after the accident some Italian laborers, including this respondent, were taken from their ordinary work of constructing and repairing the track and set to work, under the direction of the assistant roadmaster, removing the steel plates preliminary to getting the flat car back on the rails. The assistant roadmaster with a pinch bar pried up the inner edge of the top plate, so that the laborers could get hold of it with their hands, and then the men, lifting together, raised the plate up on its edge, pushed it over, and let it fall on the ground. This operation was continued until about a dozen of the plates had been pushed over in a pile by themselves. The work was being done hurriedly, and the roadmaster with strong language was constantly urging the men to "hurry up!" About twenty one of the plates then remained in part upon the car. The roadmaster was standing behind the pile, next to the perpendicular floor of the car, and was using the pinch bar to pry up plates. The workmen were standing about waiting for the plate to be lifted up, in order that they might get hold of the edge and turn it over. The respondent seems at the time to have been standing on the pile of removed plates.

While the parties were in this situation the roadmaster peremptorily ordered the respondent to come over to and behind the plates which were yet on the car; that is, to get into the place where the roadmaster himself was standing. At the time this order was given the roadmaster was not actually using the pinch bar, but was standing erect and looking at the men. In obedience to the order the respondent jumped from the top of the removed plates onto the top of the pile of plates behind which the roadmaster was standing with a pinch bar in his hand. He landed safely on top of the pile of plates at a point some two and one half or three feet distant from where the roadmaster was standing, and started immediately across the pile in a diagonal direction, with the intention of going into the space between the plates and the vertical part of the car, for the purpose of assisting the roadmaster in the work of getting the plates out of the

way. While the respondent was on the pile of plates and walking towards the roadmaster, the latter, with his pinch bar, pried up the top plate and caused it and two or three others to slide suddenly into the narrow space between the two piles until they came to rest with their outer edges on the ground alongside the outer pile of plates. This moving of the top plate caused the respondent to slide down between the two piles, with the result that his foot was caught between the outer pile and the sliding plates, and his leg broken.

It is claimed that the defendant was negligent, in that the assistant roadmaster directed the plaintiff to come on top of the pile of plates and then moved the plates while he was in the act of walking on the top of the same.

The trial court instructed the jurors that if they found that the roadmaster gave the order to the plaintiff, that in obedience to that order the plaintiff stepped on the pile of plates, that after that the roadmaster used his pinch bar and caused some of the plates to move or slide, and that this caused the accident, and that that was a careless or negligent act on the part of the roadmaster, they would be justified in finding a verdict for the plaintiff, unless they also found that the plaintiff assumed the risk of the accident, or was himself negligent. The jury was also instructed that if the plaintiff was on the pile on his own initiative, and not in pursuance of an order of the roadmaster, and was injured in the manner claimed, he could not recover, because the act of the roadmaster in moving the plates with the pinch bar would be simply the act of a fellow servant, for which the defendant would not be liable; but that the roadmaster was in charge of the work, and in directing the men where to work and in superintending the work he represented the company, and that, if in the performance of those duties he ordered the plaintiff to get onto the pile of plates, it was his duty to see that the place was reasonably safe while the plaintiff was acting in obedience to the order. It was his duty not to make the place more dangerous and hazardous than it had been when the order was given.

1. It is contended by the appellant that the complaint did not charge that the plaintiff was directed to stand on top of the pile of plates, and that the court therefore improperly submitted to the jury the

question whether the assistant roadmaster ordered the plaintiff to go on top of the pile. The complaint does allege that the plaintiff was "ordered and commanded to forthwith go upon the ground and to work in said behalf next adjacent to the lower side or edge of said gondola car that then rested on the ground, and on the load side thereof." As the car and the plates were then situated, in order to work "next adjacent to the lower side or edge of said gondola car," it was necessary for the plaintiff to pass over the pile of plates; there being no other possible way of getting from the ground to the place where he was ordered to go. The situation is explained by the evidence, and the specific charge of negligence seems to be involved in the allegations of the pleading, when what has been quoted is read in connection with the preceding and succeeding paragraphs, which describe in detail the way in which the work was being done and the manner in which the accident occurred.

2. The instruction with reference to the relation of the parties was also correct. The dual capacity in which a person may act, or, rather, the different capacities in which the same person may act, appears occasionally to produce confusing effects. But we cannot conceive the possibility of such a sudden transition as is here contended for. The roadmaster was acting as a vice principal when he ordered the respondent to come over the pile of plates to the place where he himself was standing. This is not very seriously denied, but it is urged that after the order was given, and while the respondent was obeying it, the roadmaster reverted to his position as a fellow workman, and in that capacity pushed the plates off the pile; that is to say, the respondent was ordered into a place of danger by a vice principal, and while there was injured by the negligent act of a fellow servant which made the place more dangerous than it was when he entered it. The respondent was ordered into a place of some danger by a vice principal, who then immediately, with full knowledge of his presence, by his negligent act made the place more dangerous. The proximate cause of the injury was the act of the roadmaster in ordering the respondent into a place of danger and then increasing that danger by a negligent act. Cody v. Longyear, supra, page 116, 114 N. W. 735; Barrett v. Reardon, 95 Minn. 425, 104

N. W. 309. The principle is also recognized in Berneche v. Hilliard, 101 Minn. 366, 112 N. W. 392.

The other questions raised by the appellant relate to the claim that the respondent assumed the risks involved in the work and was guilty of negligence which contributed to the injury. These were questions which the evidence required to be submitted to the jury, and this was done under proper instructions. The jury returned a verdict in favor of the plaintiff for $3,000. He suffered a compound comminuted fracture of the left leg below the knee and was in the hospital for over three months. He was unable to do any work up to the time of the trial. The leg is permanently shortened something like two inches. The amount awarded is liberal, but not sufficiently excessive as to justify this court in interfering with the conclusion of the jury.

The order is therefore affirmed.