ALBERT H. LOHMAN v. SWIFT & COMPANY and Another.[1]

July 24, 1908.

Nos. 15,681—(214).

**Order of Master—Vice Principal.**

 *Held*, following Hess v. Adamant Mnfg. Co., 66 Minn. 79, and Cody v. Longyear, 103 Minn. 116, 114 N. W. 735, that, where the master orders his servant into a place of danger to perform certain specified work, he is under legal obligation to exercise reasonable care to protect him from unnecessary risks while so engaged, and that the act of the master's foreman in this case, in starting machinery in motion which the servant was engaged in repairing pursuant to his orders, thus exposing the servant to the danger of injury, and in fact injuring him, was an act of a vice principal, and not a mere detail of the master's work.

**Liability to Servant.**

 The master's duty and liability to his servant extends, not only to such necessary and reasonable risks as are in fact known to him, but to such

---

[1] Reported in 117 N. W. 418.

as ought to have been known in the exercise of diligence proportionate to the occasion.

**Cases Distinguished.**

Doerr v. Daily News Pub. Co., 97 Minn. 248, and Berneche v. Hilliard, 101 Minn. 366, distinguished.

Action in the district court for Ramsey county to recover $10,100 damages for injuries sustained by plaintiff while repairing certain machinery in defendant's packing plant. The case was tried before Bunn, J., and a jury which rendered a verdict in favor of plaintiff for $3,000.. A motion of defendant Swift & Co. for judgment notwithstanding the verdict having been denied and a motion for a new trial having been denied if plaintiff would consent to a reduction of the verdict to $2,000, plaintiff agreed to the reduction. From an order denying defendant's motion it appealed. Affirmed.

*Price Wickersham,* for appellant.
*H. A. Loughran,* for respondent.

BROWN, J.

Action to recover for personal injuries, in which plaintiff had a verdict, and defendant appealed from an order denying its motion for judgment or for a new trial.

Plaintiff was employed in defendant's packing plant in South St. Paul, and was injured by the sudden starting of certain machinery which he was engaged in repairing under orders from his superior. Defendant's plant is composed of several departments, each under the control of a foreman, who in turn are under the direction and control of a general superintendent. Plaintiff was employed in the mechanical department, under the foremanship of one Lindeke, and his duties were, whenever directed by his foreman, to go to the various departments of the plant and repair machinery which had become out of order. One of the departments was devoted to the work of removing the skin from the backs of hogs preparatory to other disposition of the material. This was accomplished by a machine described in the record as the "back fat skinning machine." The machine, operated by steam power, was supplied with knives properly adjusted, and the material was carried through it by means of certain rollers and hooks.

Several employees were engaged in its operation, with one Monzen as foreman or "straw boss." The title of this employee is not very important, for the evidence justified the jury in finding that he had charge and supervision of this particular department, of the employees engaged with him, and of the control and operation of this machine.

It was the custom in all the departments, whenever the machinery became out of order, to report the fact to the foreman of the mechanical department, who would send an employee under him to make the necessary repairs. This department had general authority in the matter of repairs, which included sharpening the knives of the machine in question. On the day of the accident of which plaintiff here complains, Monzen sent to the mechanical department information that the knives of his machine were dull and required sharpening, in response to which plaintiff was dispatched by the foreman of that department to do the work. On arriving at the skinning department he met Foreman Monzen and inquired of him what was wanted, and Monzen directed him to sharpen the knives and also to repair the hooks which carried the material through the machine. In order that these repairs might be made, it was necessary to stop the machine, and it then was, or just previously had been, thrown out of gear for that reason, and was not in operation. Plaintiff immediately went about his work; but, before he had completed it, Monzen, the foreman, without notice or warning, started the machine in motion for the purpose, as he testified, of ascertaining whether it was in working order, and plaintiff's right hand was caught and severely injured. From the position Monzen occupied in operating the machine, and when he started it in motion on this occasion, he could not see whether plaintiff was still at work or not, and he made no effort to learn the fact.

There is no substantial controversy about these facts. At least the evidence is amply sufficient, wherever there is a controversy, to support the jury in finding their existence. At the time plaintiff was injured he was engaged in repairing the hooks, which he claims he was ordered to do by Monzen, and he had been engaged in his work only about fifteen or twenty minutes when the machine was started. The complaint charges negligence in general terms, and particularly in the failure of defendant to provide plaintiff a safe place in which to do

his work, and also the negligence of the foreman in starting the machine in motion without notice or warning.

It is not seriously contended by counsel for defendant that Monzen was not guilty of negligence in prematurely starting the machine. His main contention is that his act was a mere detail of the work, an act of a fellow servant, for which defendant is not liable, citing Doerr v. Daily News Pub. Co., 97 Minn. 248, 106 N. W. 1044, Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020, 4 L. R. A. 793, Jemming v. Great Northern Ry. Co., 96 Minn. 303, 104 N. W. 1079, 1 L. R. A. (N. S.) 696, Berneche v. Hilliard, 101 Minn. 366, 112 N. W. 392, and other similar cases. These cases are not in point. The negligence complained of in each was an act of a foreman while engaged in the ordinary and usual work of the master, not involving one of his absolute duties, and the rule there laid down does not apply to facts like those shown in the case at bar. This case is controlled by the general principle that the master is under legal obligation to exercise reasonable care to provide his servant a safe place in which to do his work, and not to subject or expose him to unnecessary risks or dangers. Cook v. St. Paul, M. & M. Ry. Co., 34 Minn. 45, 24 N. W. 311. This is a positive obligation imposed upon him as a matter of law, and he is liable for its negligent performance, whether he undertakes it personally or delegates it to another.

In this case the master delegated the control of this particular work to a foreman, which necessarily carried with it the obligation referred to. Monzen was in charge of the department and the machine in question, with full control over its operation, and the jury was justified in finding that he had authority to direct plaintiff in what particulars repairs were to be made. He gave such directions, and ordered plaintiff to perform the particular work, in doing which, under all our decisions, he represented defendant. The place in which the work was to be done was one of extreme danger to the workman if the machine was put in motion while he was there engaged, and Monzen well understood that fact. Yet without notice or warning, or an attempt to ascertain whether plaintiff had completed his work, knowing that he had just previously ordered him into the place, Monzen, for the purpose of testing and ascertaining whether the machine was in working

order, started it in motion, thus endangering plaintiff, and in fact inflicting serious injuries to him.

Plaintiff's right of recovery is supported by the elementary rule stated, and the further rule that, where the master orders his servant into a known dangerous place to perform certain specified work, he owes the servant the affirmative duty of exercising reasonable care for his protection while so engaged. Instead of exercising that care in the case at bar, the only representative of defendant on the ground charged with authority to act in the premises carelessly made plaintiff's place of work unsafe, and by affirmative action in starting the machine in motion caused the injuries complained of.

The case is controlled by Cody v. Longyear, 103 Minn. 116, 114 N. W. 735; Dizonno v. Great Northern Ry. Co., 103 Minn. 120, 114 N. W. 736, Fitzgerald v. International Flax Twine Co., 104 Minn. 138, 116 N. W. 475, Hess v. Adamant Mnfg. Co., 66 Minn. 79, 68 N. W. 774, and Perras v. A. Booth & Co., 82 Minn. 191, 84 N. W. 739, 85 N. W. 179. So far as its special facts are concerned, the case for all practical purposes is substantially similar to Cody v. Longyear, Hess v. Adamant Mnfg. Co., and Fitzgerald v. International Flax Twine Co., just cited.

In the Hess case it appeared that defendant was engaged in the manufacture of adamant, and that its plant was under the superintendence of a general foreman, whose duty it was to overlook the machinery and the progress of the work, to see that the machinery was kept in repair and working order and that the employees performed their duties. In pursuance of his authority he ordered the plaintiff to proceed to the basement of the building and there dislodge some obstruction in an elevator used to convey sand to the third floor of the building. While engaged in the performance of that duty, the foreman started the elevator in motion, resulting in a severe injury to the employee. It was urged in that case, as in the case at bar, that the act of the foreman in starting the elevator in motion was merely the act of a fellow servant, for which the master was not liable. In disposing of this contention, Judge Mitchell, who wrote the opinion of the court, said: "We are of opinion that what O'Brien did on that occasion, both in giving directions as to the machinery and in testing the power, was all referable to and in performance of his duty of su-

perintendence as foreman, in which he represented the master, and for the performance of which in such a way as negligently to expose the employees in the factory to danger the master was liable."

In the case at bar Monzen was foreman in charge of the machine being repaired by plaintiff, with authority to operate it and to keep and maintain it in repair, and as in the Hess case, after directing the plaintiff to make certain repairs, started it in motion without first ascertaining whether the work had been completed. The mere fact that the foreman in the Hess case had greater or more extensive authority than Monzen does not differentiate the two cases. It is not the rank or title the employee in charge as foreman sustains to the master which determines whether his particular act was that of the master or a fellow servant, but rather the nature of the act and whether it involved one of the personal duties the master owed to other servants.

In the Cody case plaintiff was ordered into a place to make certain repairs, dangerous if the machinery connected with it should be put in motion while he was thus engaged. The machinery was under the control of the foreman, who was also a fellow workman in the ordinary work of defendant, and before the plaintiff had fully completed the repairs being made the foreman started the machinery and thus caused plaintiff's injury. The court there held, speaking through Mr. Justice Elliott, and following the general principles of law heretofore laid down by the court, that the act of the foreman was that of the master and not a mere detail of the work. The fact that the foreman in that case knew that the plaintiff was still in the place of danger when he started the machine does not change the situation. It may be conceded in the case at bar that Monzen did not know that plaintiff was still at his work; but the rule requiring care to protect servants sent into a place of danger requires affirmative action to that end, and the master is not discharged or relieved from it by lack of notice in fact. The same principle was applied to similar facts by Mr. Justice Jaggard in the Fitzgerald case, supra.

Defendant, through Monzen, with knowledge that plaintiff was a few minutes before ordered to make the repairs, was in duty bound to ascertain before starting the machine whether they had been completed, and plaintiff had the right to rely upon the full performance of defendant's duty to protect him in this respect. 1 Labatt, Mast. & S.

1244, 1246; Kirk v. Senzig, 79 Ill. App. 251. "The master's duty and liability to his servant extend not only to such unnecessary and unreasonable risks as are in fact known to him, but to such as he ought to have known in the exercise of diligence proportionate to the occasion." Cook v. St. Paul, M. & M. Ry. Co., 34 Minn. 45, 24 N. W. 311; 1 Labatt, Mast. & S. 262, et seq.

The case is unlike the Berneche and Doerr cases. The actual notice essential to the right of recovery in the Berneche case (101 Minn. 366, 112 N. W. 392) had reference to the particular facts there before the court, which were wholly dissimilar to those presented in the case at bar. There the foreman was engaged in the usual work of the master, assisting in its performance, and was a fellow servant. But it was said in the course of the opinion that, if actual notice of the danger to which his act exposed plaintiff had been shown, recovery might be had under the doctrine of the case of Barrett v. Reardon, 95 Minn. 425, 104 N. W. 309. For the same reason the case is distinguishable from the Doerr case, 97 Minn. 248, 106 N. W. 1044. In that case the foreman was engaged in the usual work of the master, operating a printing press, and the court held, speaking through Justice Lewis, that his act, though negligent, was a detail of the work, and that of a fellow servant. In the case at bar the work in Monzen's department was not in progress. The machinery had been shut down for the express purpose of enabling plaintiff to make necessary repairs. This fact distinguishes the case from those cited by defendant's counsel.

Our conclusions are that the act of Monzen in starting the machinery in motion, under the circumstances related, was the act of the defendant, and the questions involved were properly submitted to the jury. We are sustained in this view by an abundance of authorities elsewhere: Crist v. Wichita, 72 Kan. 135, 83 Pac. 199; Coffeyville v. Shanks, 69 Kan. 306, 76 Pac. 856; Taylor v. Evansville, 121 Ind. 124, 22 N. E. 876, 6 L. R. A. 584, 16 Am. St. 372; Consolidated v. Gruber, 188 Ill. 584, 59 N. E. 254; Cole v. Wood, 11 Ind. App. 37, 36 N. E. 1074; Crystal v. Sherlock, 37 Neb. 19, 55 N. W. 294; Swift & Co. v. Bleise, 63 Neb. 739, 89 N. W. 310, 57 L. R. A. 147; New Omaha v. Baldwin, 62 Neb. 180, 87 N. W. 27; Kolb v. Carrington, 75 Ill. App. 159; Shumway v. Walworth, 98 Mich. 411, 57 N. W. 251; Erickson v.

Milwaukee, 83 Mich. 281, 47 N. W. 237; Claybaugh v. Kansas City, 56 Mo. App. 630.

The damages are not excessive, as reduced by the trial court.

Order affirmed.

On August 7, 1908, the following opinion was filed:

PER CURIAM.

The opinion heretofore filed contains the statement that Monzen started the machine in motion "for the purpose, as he testified, of ascertaining whether it was in working order"; and our attention is called, in an application for a rehearing, to the fact that Monzen gave no direct testimony to that effect. The fact that such was his purpose is fairly inferable, however, from the other evidence in the case. But this is not important. The purpose for which Monzen set the machine in motion was not the turning-point in the case. No such purpose was shown in the Cody case. The decision rests, as stated in the opinion, upon the failure of defendant to provide plaintiff with a safe place in which to perform his work.

Application for rehearing denied, and stay vacated.