## EMIL AHO v. ADRIATIC MINING COMPANY.[1]

May 24, 1912.

Nos. 17,502—(69).

**Servant sent to place of danger — duty of master.**

The rule that, where the master orders his servant into a place of danger to do some specified work, he owes the servant the affirmative duty to exercise reasonable care to protect him from injury while so engaged followed and applied.

**Verdict sustained by evidence.**

Evidence *held* to support the verdict, and that the record presents no reversible error.

Action in the district court for St. Louis county by the guardian ad litem of Emil Aho to recover $2,500 for personal injuries received by the minor while in defendant's employ. The defense was

---

[1] Reported in 136 N. W. 310.

[Note]   Servant's assumption of risk in obeying orders to perform obviously dangerous work, see note in 4 L.R.A.(N.S.) 830.

Servant's right of action for injuries received in obeying a direct command, see note in 30 L.R.A.(N.S.) 436.

contributory negligence on the part of plaintiff and that he voluntarily assumed the risk. The reply was a general denial. The case was tried before Ensign, J., and a jury which returned a verdict in favor of plaintiff for $950. From an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Spencer & Marshall* and *J. A. P. Neal,* for appellant.

*W. E. Culkin* and *John E. Samuelson,* for respondent.

Brown, J.

Action for personal injuries, in which plaintiff had a verdict, and defendant appealed from an order denying its alternative motion for judgment or a new trial.

The facts are as follows: Defendant, a corporation, owns and operates an underground iron ore mine, in and about which it employs a large number of men, and all necessary machinery and instrumentalities for taking and removing the ore from the mine. A perpendicular shaft extends from the surface of the ground one hundred fifty feet in depth, there connected with underground tunnels or levels leading to the ore deposits. Within this shaft, a "skip," so called, was operated and used in removing the ore from the mine to the surface, where it was loaded upon cars and carted away. The skip is in fact an elevator, consisting of a large iron bucket which, when lowered to the bottom of the shaft, is loaded with ore, and, by means of cables and other appliances, is raised to the surface by motive power. The cables are attached to and controlled by a stationary engine, located some distance from the mouth of the shaft, and are operated by an engineer upon signals from workmen or the foreman in charge of the hoisting operations. When lowered in the shaft, this skip or bucket rests in a hole below the surface of the bottom of the mine to such a depth that the ore brought by tram cars from the drifts or levels may be transferred to the bucket by merely tipping the same and permitting the ore to drop into the same, when it is raised to the surface. Occasionally it became necessary to clear out

this skip hole; for ore and earth would accumulate therein, interfering with the convenience of the work. When necessary to so clear it out, the skip would, on proper signal to the engineer, be raised to a safe position within the shaft, and there held stationary until the work was completed. In doing this work, an employee would be sent into the hole, directly beneath the overhanging skip, to shovel out the accumulations therein and put it in order.

Plaintiff was in the employ of the defendant at this mine as a common laborer. He was unfamiliar with the dangers of the particular work, and had received no warnings or instructions with reference to it. He was a foreigner, unable to speak the English language, though he could sufficiently comprehend and understand the orders of his superiors. On the day of the accident of which he here complains, plaintiff was set to work cleaning out the skip hole. The skip was raised a distance of about seventy feet, on a signal to the engineer, and plaintiff got into the hole, and was performing his work, when suddenly, and without notice or warning, the skip was lowered by the engineer, thereby crushing plaintiff beneath it and severely injuring his person. It appears that the engineer received a signal to lower the skip; but who gave the signal the evidence fails wholly to show, except that it does appear that it was not given by plaintiff or his fellow workman.

The complaint charges that plaintiff's injuries were caused by the negligent failure of defendant to provide him with a reasonably safe place in which to do his work, or to keep and maintain the place in a reasonably safe and suitable condition, or to guard or protect him while engaged in this hazardous work; that plaintiff was unfamiliar with the dangers of this employment; and that defendant negligently failed to warn and instruct him concerning the same, in consequence of which, and other charges of negligence not necessary to refer to, plaintiff was injured.

The trial court submitted the case to the jury, and left to them the question of defendant's negligence in the respects substantially as just stated. In addition to their general verdict, the jury were re-

quired to designate the particular fellow servant whose negligent act caused the injury, if they found such to be the fact. To this special question, the jury answered that the negligence was that of the "defendant company."

The contentions on this appeal are: (1) That the evidence wholly fails to establish a case of negligence, and therefore that the court below erred in not directing judgment for defendant; and (2) that for certain errors occurring on the trial a new trial should have been granted.

1. The pleadings and evidence bring the case squarely within the general rule, often applied by the court, that, where the master orders the servant into a known dangerous place to do and perform certain specified work, he owes the servant the affirmative duty to exercise reasonable care for his protection while so engaged. Cody v. Longyear, 103 Minn. 116, 114 N. W. 735; Dizonno v. Great Northern Ry. Co. 103 Minn. 120, 114 N. W. 736; Fitzgerald v. International Flax Twine Co. 104 Minn. 138, 116 N. W. 475; Perras v. A. Booth & Co. 82 Minn. 191, 84 N. W. 739, 85 N. W. 179; Hess v. Adamant Mnfg. Co. 66 Minn. 79, 68 N. W. 774; Lohman v. Swift & Co. 105 Minn. 148, 117 N. W. 418.

The position of plaintiff, while engaged in cleaning out the skip hole, was dangerous, unless the skip itself was held in a secure and stationary position above him. This situation was known to defendant; and it was under legal obligation to protect plaintiff while he was so engaged. He was not so protected; on the contrary, the skip was lowered and plaintiff, in consequence, crushed beneath it. It does not matter, within the authorities cited, who caused the skip to be lowered. The fact that it was lowered was evidence of the failure of defendant to discharge its duty to protect plaintiff; and it was not necessary that plaintiff point out the person who gave the signal to the engineer.

Our examination of the record leads to the conclusion that the evidence amply supports the verdict, and that the jury was fully justified in answering the special question submitted to them, to the effect that plaintiff's injuries were caused by the negligence of "de-

fendant company." The cause of the accident is not, as contended by defendant, left to conjecture or speculation; on the contrary, it clearly and conclusively appears that it was caused by lowering the skip, and that it was lowered by the engineer in response to a signal so to do. It is true that it does not appear who gave the signal; but the absence of this information does not leave the cause of the accident in the least doubt. Defendant was negligent in not seeing to it that the skip was not lowered during the time plaintiff was engaged in the particular work. Berneche v. Hilliard, 101 Minn. 366, 112 N. W. 392, and other like cases are not in point. The servant was not, in that case, ordered into a place of danger, entitling him to protection while thus engaged.

2. We have examined the assignments of error made the basis for the motion for a new trial, and find no sufficient reason for disturbing the order appealed from. The court charged the jury that if they were "unable to determine from the evidence why the skip in question came down at the time plaintiff was injured there can be no recovery in this action. No verdict in the case can be based on mere theory, speculation, or guesswork as to the cause of the skip coming down." It is contended that, because the evidence did not point out the person who gave the signal to the engineer to lower the skip, the cause of its lowering could not be found by the jury, as stated in the instruction quoted; and therefore that the verdict is contrary to the charge of the court, and should be set aside. We do not sustain this contention.

Just what the learned trial court intended the jury to understand from this instruction is not clear; but it is evident from other portions of the charge that the court did not intend the effect now claimed for it by defendant. The cause of the lowering of the skip was made clear by the evidence. It was lowered in response to a signal given for that purpose. As heretofore stated, it was not incumbent upon plaintiff to point out the person who gave the signal; and the fact that it was lowered upon him while occupying the dangerous position was evidence that defendant failed in its duty to protect him.

3. After the accident, plaintiff was removed from the shaft, and,

on being taken to the engine house for temporary treatment, one of his assistants asked the engineer why he lowered the skip. In response, the engineer said that he had been signaled to do so. All this occurred within twenty minutes after the accident. The admission of this evidence is assigned as error. The evidence was admissible. The question is covered by Hyvonen v. Hector Iron Co. 103 Minn. 331, 115 N. W. 167, 123 Am. St. 332.

4. The other assignments do not require special mention. We have fully considered them, and find no reversible error.

Order affirmed.