## ERNEST MAHR v. JAMES FORRESTAL and Another.[1]

December 11, 1914.

Nos. 18,872—(115).

**Evidence — verdict.**

    1. The evidence in this personal injury action justified submitting to the jury the question of defendant's liability, and justified the verdict.

**Charge to jury.**

    2. There was no reversible error in certain instructions.

**Damages.**

    3. The damages are excessive.

[1] Reported in 149 N. W. 938.

Action in the district court for Hennepin county to recover $30,-000 for personal injuries received while in the employ of defendants. The answer denied negligence on defendants' part, and alleged that the physical conditions under which plaintiff was working at the time of injury were easily observable and well known to him, and that he assumed the risks. The facts are stated in the opinion. The case was tried before Olin B. Lewis, J., and a jury which returned a verdict for $11,337.50. From an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Affirmed on condition.

*Barrows, Stewart & Ordway,* for appellants.

*Larrabee & Davies,* for respondent.

BUNN, J.

The verdict in this personal injury action was for the plaintiff in the sum of $11,337. Defendants appeal from an order denying their motion for judgment or for a new trial.

The facts surrounding the accident are substantially as follows: In the spring and summer of 1913, defendants were operating a self-propelling or "walking" dredge near Marathon, Iowa. For some weeks prior to May 3, the crew had been engaged in repairing the dredge. Youngquist was defendant's foreman in charge of the repair work on this and other dredges of defendant. Russell was the foreman in charge of this particular dredge. The repair work was finished on the morning of May 3, and the crew commenced "walking" the dredge to the place where digging was to be done. In this crew were the foreman, an engineer, a blacksmith and assistant, a "runner" and a "craner." One Marvin was the "runner," and plaintiff was the "craner." The "runner" had control of the levers which threw the machinery in and out of gear, and charge of the operation of these levers in walking the dredge and in digging. The "craner" operated the swinging of the crane, or machinery which did the digging. It was his duty to trip or empty the scoop when digging operations were going on. This was done by means of a trip rope, the end of which was coiled upon a hook which hung above the machinery. To reach this rope it was convenient to stand

upon a pulley on the backing shaft which was stationary when the dredge was not walking or digging. After the dredge had "walked" some 50 feet on the day in question, it became necessary to stop and do some digging in order to cross a ditch. Russell, the foreman, was not on the dredge at the time. Marvin was in his place near the levers on the front of the dredge, and plaintiff was standing near Marvin. Plaintiff testified that Marvin told him to go and fix the trip rope. He got upon the pulley in order to comply with the order, Marvin at first standing upon the floor assisting, but afterwards going over to the levers. While plaintiff was standing upon the pulleys, fixing the trip rope, the machinery started, the pulley began to turn, and plaintiff fell between the pulley he was standing on and the master pulley on the main shaft, and received the injuries complained of.

When the dredge stopped prior to the accident, the engine and main shaft were left running. To start the machine to walking or digging, it was necessary to throw in the levers.

This would start the entire machinery, including the shaft on which was the pulley on which plaintiff stood. This pulley, when at rest, was about half an inch from the revolving pulley on the main shaft. They were friction pulleys, and throwing the levers operated to make them come in contact.

Plaintiff's case rests upon the claim that Marvin ordered him to fix the trip rope and, while he was engaged in doing this, started the machinery in motion. In other words, the theory is that Marvin was a vice principal, and that his negligence was the negligence of the master. Defendants contend that they had not delegated to Marvin their absolute duties to furnish their servants a safe place to work, and to use reasonable care to keep the place safe; they further claim that in starting the machinery Marvin was engaged in one of the details of his work as a servant of defendants, and was not acting as their *alter ego,* or vice principal. The evidence was abundantly sufficient to warrant the jury in finding that Marvin was boss on the dredge when Russell was not there, and that plaintiff and the other employees were under his orders. We must take as established the fact that Marvin ordered plaintiff to fix the trip rope, and knew

that he was in a position of extreme danger should the machinery that moved the pulley he was standing on be started without warning. The jury was justified in finding that Marvin did so start this machinery. These facts bring the case within a familiar line of decisions of this court: Hess v. Adamant Mnfg. Co. 66 Minn. 79, 68 N. W. 774; Barrett v. Reardon, 95 Minn. 425, 104 N. W. 309; Cody v. Longyear, 103 Minn. 116, 114 N. W. 735; Dizonno v. Great Northern Ry. Co. 103 Minn. 120, 114 N. W. 736; Lohman v. Swift & Co. 105 Minn. 150, 117 N. W. 418; Raitila v. Consumers Ore Co. 107 Minn. 91, 119 N. W. 490; Aho v. Adriatic Mining Co. 117 Minn. 504, 136 N. W. 310; Kempfert v. Gas Traction Co. 120 Minn. 90, 139 N. W. 145. It is sought to distinguish the cases cited from the present case by reason of the particular facts here. It is urged that Marvin, in moving the levers that started the machinery, was performing a detail of his work as a fellow-servant of plaintiff. The same contention was made and overruled in many of the cases cited. In the Cody case, the foreman was also a fellow-workman in the ordinary work of defendant, but it was held that his act in starting the machinery was the act of the master and not a mere detail of the work. In the Lohman case the same contention was made and elaborately argued but overruled. As stated by the present Chief Justice in the case last referred to: "It is not the rank or title the employee in charge as foreman sustains to the master which determines whether his particular act was that of the master or a fellow servant, but rather the nature of the act, and whether it involved one of the personal duties the master owed to other servants." We think that the act of Marvin involved one of the personal duties that defendant owed its servants, the duty to exercise reasonable care to provide them a safe place to do their work, and not to subject them to unnecessary risks or dangers. And we think the evidence warrants the conclusion that defendant had delegated the performance of these duties to Marvin, when the foreman was not on the dredge. Counsel argue that the facts here bring the case within the rule applied in Jemming v. Great Northern Ry. Co. 96 Minn. 302, 104 N. W. 1079, 1 L.R.A.(N.S.) 696; Doerr v. Daily News Pub. Co. 97 Minn. 248, 106 N. W. 1044; Berneche v.

Hilliard, 101 Minn. 366, 112 N. W. 392, and similar cases. We are unable to agree to this. The above cases have so often been distinguished from cases like the present that it seems unnecessary to again point out the differences. It is enough to say that they lack the peculiar features of the present case that make the negligent act that of the defendants themselves rather than the act of a fellow-servant of plaintiff.

It is true that Marvin did not order plaintiff to stand upon the pulley, and that it was probably not necessary to do so in order to fix the trip rope. But it was convenient and customary to stand upon the pulley to reach the rope, instead of procuring a box or barrel upon which to stand, and Marvin knew that plaintiff was in the habit of so using the pulley, and that he was actually standing thereon at the time. The position was not particularly dangerous while the pulley was stationary, but became extremely dangerous if the pulley moved. This was the situation in most of the cases in which the master has been held liable for the negligent act of his vice principal. We conclude that the evidence justified submitting to the jury the question of defendants' liability for the negligence of Marvin, and justified the verdict finding them liable.

The trial court submitted the question whether Marvin was a vice principal to the jury. The instructions are criticized as laying down a wrong test for the determination of this question, as making the rank of Marvin the criterion, rather than the delegation to him by the master of the performance of an absolute duty of the latter. It is argued that the instructions assigned as error practically permitted a recovery, if Marvin was a superior servant with the right to give orders to plaintiff, and if he negligently started the machinery, thus failing to distinguish between the negligence of a servant in his capacity as such, and his negligence in the performance of absolute duties of the master intrusted to him. But, in each of the instructions criticized, the liability of defendants is made dependent upon the question whether Marvin was acting for the defendants, and there was no request to have this more particularly defined, and no exception taken at the time. We find no reversible error here, and there is no claim of error elsewhere.

The verdict is large, but the injuries were very serious. Plaintiff was in the hospital five months. The muscles of his left leg were torn, and numerous skin grafting operations were only partially successful. The external "hamstring" muscle was destroyed. The surface of the injured leg has healed over, except at one place, but it is an unhealthy dry surface, and will always need applications of oil to keep it from cracking. The injured leg will never be as large or as strong as the other leg, and there is and probably always will be a partial paralysis in the injured muscles. Plaintiff is able to walk a little without crutches or cane, but with difficulty, owing to the muscles of the injured leg not being under control. It was left more or less a matter of speculation whether the future would bring material improvement. Without minimizing the nature or probable duration of the condition, and giving due regard to plaintiff's suffering, and his loss of earning capacity, we think the verdict is still excessive. There was no evidence that plaintiff would not be able to earn a good living in spite of his injury, which, serious as it undoubtedly is, does not equal in gravity of consequences the loss of a leg. We feel that $8,500 is ample compensation, and that anything beyond that savors of punishment. If plaintiff, within 10 days after the remittitur goes down, files his consent to a reduction of the verdict to $8,500, the order appealed from will stand affirmed. Otherwise a new trial is granted.