# JOE MOROVICH v. INLAND STEEL COMPANY.[1]

November 5, 1915.

Nos. 19,347—(43).

**Master and servant — vice principal.**

Where defendant's employees, engaged in taking up and loading upon a car the sections forming the track for the steam shovel in a mine, were accustomed to bring such sections to the car and drop or deposit them without receiving or expecting any direction or signal as to when they should drop them except such as the men about to drop a section gave to each other, no duty rested upon defendant to direct, by signal or otherwise, when the men holding a section should drop it; and, for that reason, a "straw boss," who gave the signal for dropping the section which injured plaintiff, was not acting as a vice principal in so doing, but as a fellow servant of plaintiff, and defendant was not responsible for his negligence.

Action in the district court for Crow Wing county to recover $10,000 for personal injury received while in defendant's employ. The case was tried before McClenahan, J., and a jury which returned a verdict for $2,000. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*Abbott, MacPherran, Lewis & Gilbert,* for appellant.

*M. E. Ryan,* for respondent.

TAYLOR, C.

Defendant company had about 50 men engaged in stripping an iron mine. They had a mine captain in charge of the work, a general foreman under the captain, and subforeman known as a "straw boss" at the head of each crew or "gang." Whenever a "cut" was completed by the steam shovel, it became necessary to take up the steam shovel track and relay it for the next "cut." This track consisted of steel rails in sections six feet in length, and the rails of each section were held rigidly

[1] Reported in 154 N. W. 735.

---

Note.—On question whether duty of master to warn servant is delegable, see note in 26 L.R.A.(N.S.) 624.

On the question of vice principalship as determined with reference to character of act causing injury, see note in 54 L.R.A. 37.

at the proper distance from each other by cross-bars. At the time of the accident a crew of which one Mike Bool was "straw boss" were engaged in loading these sections upon a car for the purpose of moving them to the place where they were to be relaid to enable the shovel to make another "cut." Plaintiff and three other members of the crew brought a section to the car at a time when other men were placing another section upon it, and for that reason were unable to deposit their section upon the car until the other section had been put in position. While they were waiting, some of the men holding the section, other than plaintiff, remarked that it was heavy and asked if they could not throw it down, and upon some one responding "let her go" all except plaintiff dropped it. Plaintiff did not release his hold and the section fell upon and injured his shin and foot, although no bones were broken. He brought suit for damages and recovered a verdict. Defendant moved for judgment notwithstanding the verdict, and, in the event that should be denied, for a new trial. Both motions were denied and defendant appealed.

A large number of the men engaged in the work were foreigners, some of whom, including plaintiff, did not understand English. Bool was an Austrian, and plaintiff and the three who were engaged with him in carrying the section in question were also Austrians. All of them except plaintiff understood some English.

Plaintiff concedes that he cannot recover for any negligence on the part of his coemployees in dropping the section, for the reason that they were his fellow servants; but claims that the direction to drop the section was given by Bool in English which plaintiff did not understand; that in giving such direction Bool was acting as a vice principal; that it was the duty of defendant to furnish an interpreter to translate orders to the men who did not understand English; that Bool was not only a subforeman or "straw boss" but also an interpreter; that it was the duty of defendant through its vice principal, Bool, to translate the order in question into plaintiff's vernacular; and that the injury resulted from the failure to perform that duty.

The witnesses upon both sides agree that the men engaged in handling and moving these sections put them down, or dropped them, at their own volition and whenever they chose, without receiving or expecting

any order or signal from the "straw boss" or any one else. In fact the giving of the alleged order in question is the only instance disclosed by the evidence in which such an order or signal was ever given by Bool or by anyone other than one of the men engaged in moving the section. Defendant contended that this order or signal was not given by Bool, but by one of the men holding the section; but we must take the version of the occurrence given by the testimony on the part of plaintiff. This is as follows: While waiting for another "gang" to get out of the way, plaintiff and his three associates stood near the car holding their section. Some of his associates remarked that it was too heavy to hold, and asked if they couldn't drop it. Bool who stood near said "Let her go." Plaintiff testified that he understood what was said by the other men as they spoke in his own language but did not understand what was said by Bool who spoke in English, and for that reason did not drop the section at the same time as the others. The facts hereinbefore stated form the entire basis for plaintiff's claim that defendant owed him the duty to give him warning before the other men dropped the section. It is to be borne in mind that negligence on the part of his fellow servants in dropping the section without warning does not entitle plaintiff to recover; and that the primary question is whether Bool, in speaking as he did, performed a nondelegable duty of the master. If it was an absolute duty of the master to give a signal to the men before they were permitted to drop the section, we may assume that the signal should have been given in such manner that those to whom it was given could understand it. It clearly appears, however, that there was no custom for the master, nor for any one on behalf of the master, to give such signals. On the contrary it appears that the men determined such matters for themselves, without receiving or expecting orders or signals from any one else. Picking up these sections, carrying them to the car, and depositing them upon the car or, in case that could not be done, dropping them upon the ground, was a mere detail of the work; and, in the absence of a custom to that effect, no duty was imposed upon the master to give an order or signal designating the time when they were to be deposited upon either the car or the ground. In giving the order or signal in question, Bool was not performing a duty imposed by law upon the

master, and consequently was not acting as a vice principal but in the capacity of a fellow servant. Lindvall v. Woods, 41 Minn. 212, 42 N. W. 1020, 4 L.R.A. 793, and the cases cited under that case in 3 Notes on Minnesota Reports, 120. Neither do the facts of this case bring it within the principle of those cases which hold a master liable for setting a dangerous agency in motion without warning to employees in a position to be injured thereby; nor within the rule applied in Barrett v. Reardon, 95 Minn. 425, 104 N. W. 309.

Order reversed and judgment directed for defendant.